## Kephart v. Looker (No. 2)

*Lewis G. Steinberg,* for plaintiffs.
*Joseph G. Skelly,* for defendants.

BROWN, *P.J.*, April 10, 1981—This litigation involves a dispute over the propriety of certain actions of the board of trustees of defendant corporation not for profit which affected the rights of plaintiffs to remove and appoint trustees. Under count II of the complaint, those actions have been challenged as being violative of sections 7726 and 7783 of the Corporation Not-for-profit Code, 15 Pa.C.S.A. §§7726 and 7783. Plaintiffs have filed a motion for summary judgment under Pa.R.C.P. 1035(b) seeking a judgment in their favor under count II. The record of the case consists of plaintiff's amended complaint, defendants' answer, new matter, and counterclaim, and plaintiffs' reply to new matter and counterclaim as well as various affidavits filed by the parties in support of and against the summary judgment request.

In resolving a summary judgment request, the court should determine if there is any genuine issue as to a material fact which is essential to granting the requested judgment. If such an issue exists then a summary judgment cannot be granted and the matter must proceed to trial or hearing for a resolution of the disputed factual issue or issues. However, if there is no genuine issue as to any material fact, and the record, viewed most favorably to the non-moving party, reveals that the moving party is entitled to judgment as a matter of law, then a summary judgment may be granted under Pa.R.C.P. 1035(b): Dowlin v. Coatesville Area School District, 22 Pa. Commonwealth Ct. 433, 436, 350 A. 2d 190 (1975).

The pleadings in this matter are somewhat voluminous and do exhibit numerous differences of opinion as to certain facts in the case. However, after reviewing the pleadings and the affidavits on file the court finds that the following facts are not substantially in dispute:

(1) Prior to September 7, 1976 the county commissioners then in office operated and maintained a county home for the elderly which was known as Susque View Home.

(2) Sometime during 1976, the county commissioners were advised that the county could receive additional reimbursements for operating the county home if it were to be licensed as a nonprofit corporation rather than as a county home, and as a result of such information the commissioners explored the possibility of having a nonprofit corporation formed for the purpose of operating the home.

(3) After some study of the situation, on September 7, 1976, Susque View Home, Inc.[1] was incorporated at the request of the county commissioners for the purpose of assuming responsibility for the operation and maintenance of Susque View Home. While there were perhaps a number of reasons for such incorporation, it appears quite evident that the main reason was the obtaining of higher rates of reimbursement through Federal and state funding programs.

(4) Prior to the aforesaid incorporation, the three individual defendants in this proceeding were solicited by the county commissioners to be the incorporators of Susque View Home, Inc. and were on July 5, 1976 designated by the county commissioners as the incorporators and the first board of trust-

---

1. Plaintiffs have identified the corporate defendant as Susque View Home, Inc. Defendants deny that is the correct name and allege that the correct designation is Susque View Home. This is the name used in the Articles of Incorporation while the By-laws use the name Susque View Home, Inc. Presumably the Articles of Incorporation are controlling on this issue; however, until the caption of the case is properly amended, the court will use the corporate name as alleged by plaintiffs.

ees. Defendants in their answer have denied that they were appointed as the first board of trustees by the county commissioners, and to the contrary allege that they designated themselves as the first board of trustees under Article IX of the Articles of Incorporation. While this position is technically correct, in seeetance it ignores the events leading up to the creation of the corporation. Both the corporation and its trustees owe their existence to the actions of the countycommissioners. Neither the corporation nor its trustees had a meaningful existence without the cooperation of the commissioners which included the signing of certain agreements turning the operation and maintenance of Susque View Home over to the corporation and its trustees. In summary then the court believes that there is no substantial dispute that the positions of the individual defendants and the corporation itself were created by the county commissioners.

(5) Article VI of the Articles of Incorporation filed on behalf of Susque View Home, Inc. provided: "The corporation shall have no members."

(6) Article IX of the Articles of Incorporation for Susque View Home, Inc. provided: "The Board of Trustees of the corporation shall consist of three persons appointed by resolution of the Commissioners of Clinton County. The original trustees who shall serve until the first annual meeting of the corporation and their addresses are set forth below:

| Name | Address |
|---|---|
| Garland R. Young | 529 Frederick Street Flemington, PA 17745 |
| Rev. Russell L. Looker | 6 West Water Street Lock Haven, PA 17745 |
| Mrs. Elizabeth McCormick | Pine Tree Road Sunset Pines Lock Haven, PA 17745 |

Immediately prior to each annual meeting, the Commissioners of Clinton County shall appoint or reappoint three trustees for a term of one year and until their successors are duly appointed and qualified, unless sooner removed in accordance with the By-laws and the law."

(7) Article 3.1 of the By-laws of Susque View Home, Inc. provided: "The corporation shall have no members. All powers of the corporation shall be exercised by the Board of Trustees appointed by the Commissioners of Clinton County for a term of one (1) year."

(8) Article 7.1 of the By-laws of Susque View Home, Inc. provided: "The entire Board of Trustees, or any individual Trustee, may be removed from office for cause by the Resolution of the Commissioners of Clinton County, provided that such Resolution appoints new Trustees to fill any vacancies so created. The operation of this corporation in such a manner that the corporation's expenditures exceed its revenues (including any subsidy from Clinton County) during any quarterly accounting period shall be deemed sufficient cause for removal of one or more of the Trustees."

(9) Article 9.1 of the By-laws of Susque View Home, Inc. provided: "The Board of Trustees shall present annually to the Commissioners of Clinton County a report, verified by the chairman and treasurer or by a majority of the Board of Trustees, showing in appropriate detail the following:

(a) The assets and liabilities of the corporation as of the end of the fiscal year immediately preceding the date of the report.

(b) The principal changes in assets and liabilities during the year immediately preceding the date of the report.

(c) The revenue or receipts of the corporation,

both unrestricted and restricted to particular purposes, for the year immediately preceding the date of the report.

(d) The expenses or disbursements of the corporation, for both general and restricted purposes, during the year immediately preceding the date of the report."

(10) Article 11.1 of the By-laws of Susque View Home, Inc. provided: "These By-laws may be modified, amended, or repealed by the Board of Trustees at any meeting by vote of two-thirds of the members of the Board of Trustees. Thirty days notice in writing shall be given to each member of the Board of Trustees of the intention to amend, modify, or repeal any By-law."

(11) In 1979 two of the three County Commissioners involved in setting up Susque View Home, Inc. were replaced by the electorate, and in 1980 when the new commissioners assumed office it appears that certain disagreements and differences occurred between the new commissioners (plaintiffs in this proceeding) and defendants.

(12) As a result of the condition described in finding no. (11) various actions and counteractions were taken by plaintiffs and defendant trustees. These particular actions and considerations included the following:

1. On March 18, 1980, defendant trustees amended the by-laws by eliminating Article 7 in its entirety.

2. On April 3, 1980, defendant trustees amended Article IX of the Articles of Incorporation by eliminating the power of the county commissioners to appoint trustees and reposed that power in the trustees themselves.

3. On May 8, 1980, plaintiffs by resolution removed defendant trustees from office and ap-

pointed themselves to fill the vacancies created on the board. The cause supporting the resolution was defendants' alleged attempt to remove all county control from the operation of and fiscal management for Susque View Home, Inc.

(13) On the date of incorporation (i.e., September 7, 1976), the county commissioners were leasing the long-term nursing care facility known as Susque View Home from the Clinton County Municipal Authority and paying rentals sufficient to fund the debt service on the bonds used in financing the construction of the facility. On April 1, 1977, this lease was assigned by the county commissioners to Susque View Home, Inc. with the corporation to make the rental payments to the authority. By the terms of this assignment the county commissioners remained liable to the authority under the terms of the lease.

(14) Under an undated written agreement signed by the county commissioners and the trustees, the County agreed " . . . to provide to Susque View, funding of any operating deficits accrued by Susque View so long as Susque View continues as a non-profit corporation."

(15) The reason given by defendant trustees in the affidavit of defendants in opposition to plaintiffs' motion for summary judgment (pp. 15-18) for amending the Articles and By-laws was a deteriorating relationship between the trustees and the county commissioners who assumed office in January, 1980. Numerous allegations have been presented in support of this conclusion including a fear that the county commissioners were about to remove the trustees and name themselves to the board. It is clear from defendants' affidavit that in order to foreclose the possibility of being removed, the trustees then amended the By-laws and Arti-

cles of Incorporation and deleted the county commissioners' powers of appointment and removal of the trustees.

### Discussion and Conclusions of Law

Plaintiffs' request for a sumary judgment under count no. II relies entirely on the interpretation and application of various provisions of the Corporation Not-for-profit Code, 15 Pa.C.S.A. §7101 et seq. The relevant provisions of that code as they pertain to plaintiffs' argument would include sections 7103, 7555(a), 7725, 7726, and 7783.

Plaintiffs' argument is that under the aforesaid statutory provisions, the county commissioners were members of the corporation and that the various actions taken by defendant trustees in eliminating the county commissioners' removal and appointive powers over the board of trustees constituted a violation of sections 7726 and/or 7783, and that the court should take appropriate steps to nullify those particular actions and to remove the present board of trustees from office. Defendants deny plaintiffs' argument and assert rather vigorously that plaintiffs are not members of the corporation and thet their actions were legal under the aforesaid code.

The first issue presented to the court then is whether plaintiffs are members of Susque View Home, Inc. so as to have standing to ask for relief under sections 7726 and 7783. For an answer to this question the court must turn to section 7103 of the code which provides as follows:

"'Member.' One having membership rights in a corporation in accordance with the provisions of its bylaws . . . If and to the extent the bylaws confer rights of members upon . . . governmental or other

entities pursuant to any provision of this part the term shall be construed to include such . . . governmental or other entities."

It is plaintiffs' contention that by By-laws of the corporation provided for the commissioners to appoint and remove trustees (Article 3.1) and further for the commissioners to receive an annual financial report. (Article 9.1) These two rights it is argued are membership rights.

With regard to the commissioner's appointive and removal powers over the trustees, section 7725(a) provides as a general rule that directors[2] shall be elected by the members. Section 7726(a) also as a general rule provides that the removal of directors is a right of the members. Thus, it logically follows that one who has the power to appoint and remove the trustees has a membership right as envisioned by the code.

Concerning annual reports, section 7555(a) provides that these shall be provided to the members of the corporation by the board. Article 9.1 of the By-laws provides for the furnishing of such a report to the commissioners and uses the exact language of section 7555(a) in describing the contents of the report. Thus, the right to receive an annual report under the code is a right reposed in a member of the corporation.

Since the county commissioners represent county government the conferring of these membership rights upon them is equivalent to conferring them upon a governmental entity. Under section 7103, the county commissioners are then members of Susque View Home.

---

2. Trustees and directors are synonymous in the present case. It is clear that the duties of the trustees of Susque view Home are the same as those performed by directors under the Corporation Not-for-profit Code.

Defendants have not attempted to counter this argument of statutory construction, but instead have relied exclusively upon the fact that the Articles of Incorporation and the By-laws do not designate the commissioners as members, and upon the fact that those documents specifically provide that there shall be no members. The court cannot disagree with defendants' argument in this regard as far as it goes. However, it fails to recognize under section 7103 that membership in the corporation may well exist and be created other than by specifically designating a particular person or persons as members. If membership rights have been conferred in the By-laws upon a governmental entity, the entity receiving those membership rights will be considered to be a member of the corporation under section 7103.

The second aspect of plaintiffs' request for a summary judgment involves an inquiry into the validity of the trustees' amending the Articles and By-laws so as to eliminate the commissioners' power to appoint and remove trustees.[3] In this regard, the trustees' actions must be evaluated in the context of sections 7726 and 7783 of the Corporation Not-for-profit Code.

Section 7726(c) dealing with removal of directors provides in its relevant parts as follows:

"(c) By the court. —The court may, upon petition of any member . . . remove from office any director in case of . . . *gross abuse of authority or discretion with reference to the corporation, or for any*

---

3. The alleged amendments pertain to Article IX of the Articles of Incorporation and Article VII of the By-laws. No mention has been made in these proceedings as to that portion of Article 3.1 of the By-laws which gives the commissioners the power of appointment as to the trustees. Apparently that provision remains intact.

*other proper cause,* and may bar from office any director so removed for a period prescribed by the court . . . " (Emphasis supplied.)

Section 7783(a) dealing with review of a contested corporate action provides as follows:

"(a) General rule. — Upon petition of any person whose status as, or whose rights or duties as, a member, director, member of an other body, officer or otherwise of a nonprofit corporation are or may be affected by any corporate action, the court may hear and determine the validity of such corporate action."

In interpreting and applying sections 7726 and 7783, there are very few appellate decisions decided thereunder, and none have been found dealing with the factual circumstances of the present case.[4] This court must then exercise its judgment in construing both statutes and effectuating the legislative intent expressed therein.

In defense of their actions, the trustees have argued that they possess the sole power and authority to amend the By-laws and the Articles of Incorporation and that these powers are evidenced both in the By-laws and in the Articles. This is a correct conclusion based upon those documents. However, no power is absolute and as provided by sections 7726 and 7783, the trustees' actions on behalf of the corporation can be subjected to judicial review. If the trustees' actions constitute a gross abuse of discretion with reference to the corporation, then under section 7726 they can be removed, or in the alternative if the corporate action affects the status of a member of the corporation or the rights or duties of a member of the corporation, then under

---

4. Counsel have likewise been unable to cite any appellate authority dealing with the issues before the court.

section 7783 the corporate action can be reviewed to determine its validity.

A second argument advanced on behalf of the trustees is that at the time of incorporation, neither the commissioners nor the trustees intended that the commissioners have any membership or membership rights in the corporation, nor did they intend for the commissioners to have any control over the corporation. On the assumption that this is a true representation of everyone's intent at the time, this in itself does not conclusively resolve the issues before the court. As has been previously seen, even though the parties did not intend the commissioners to have membership rights in the corporation, under section 7103 of the code the commissioners were members of the corporation by operation of law because of certain rights of membership conferred upon them. Thus, the fact that the parties did not intend that the commissioners have any control over the corporation may well have to be subordinated to principles of law which recognize that such control did legally exist.

In analyzing the present factual situation, there is one recurring point that keeps surfacing and will not disappear. Susque View Home, Inc. is carrying on a function which is primarily the responsibility of county government, and it is doing that in a facility which is owned by the public through the Clinton County Municipal Authority. It is operating with the county being liable for the rental payments for the home in the event the corporation does not honor those payments, and finally, the corporation is operating with a guarantee that Clinton County will underwrite any operating deficit which the corporation might incur. As such, Susque View Home, Inc. is not operating as a private nonprofit corporation in the private sector. Its use of public property as well as its prospective use

of public funds to cover operating deficits presents a unique situation.

There is not much hard and undisputed factual material available at this stage of the proceedings that relates to the circumstances of the incorporation in 1976. What little data that is available suggests strongly that the incorporation was accomplished with much difficulty over an extended period of time. The idea of a nonprofit corporation arose in early 1976. Thereafter the incorporators were contacted by the commissioners about their participation in the venture. On July 5, 1976, the commissioners officially authorized the creation of the corporation. This authorization was implemented on September 7, 1976 with the filing of Articles of Incorporation. On April 1, 1977, an assignment of the lease for the hooefacility was effectuated in favor of the corporation. Still later an undated agreement was executed to provide for county subsidization of the facility's operating deficits. One of the difficulties with which the parties were confronted throughout this period related to the issue of corporate autonomy on the one hand and some degree of control by public representatives on the other hand. In view of the use of public property and funds in the operation of the home, the existenceof this difficulty is readily understandable.

Even later throughout the years 1978 and 1979, the issue of county control over the corporation caused problems with Federal and state agencies.[5] These agencieeapparently recognized that the corporation was not in fact out of control of the commissioners, and notwithstanding the commission-

---

5. See the letters and documents comprising Exhibit "D" of affidavit of defendants in opposition to plaintiffs' motion for summary judgment.

ers' and the trustees' success in convincing them otherwise, as a matter of law it can be readily observed that the corporation was always in theoretical control by the county commissioners by virtue of their right to remove and appoint trustees. These removal powers could be used for cause only; however, upon the expiration of each one year term, the commissioners could appoint new trustees without showing cause for not reappointing the old trustees.

In the court's judgment, the county commissioners not only had membership rights in the corporation as previously discussed, but because of the corporation's use of public property and potential use of public funds, those membership rights were coupled with an interest. As with other rights coupled with an interest (e.g., a power of attorney) they could not be unilaterally extinguished or deleted by the trustees. To hold otherwise would be to sanction the potentially unrestricted use of public property and public funds by a private corporation. This use would be beyond the control of the public's elected officials who would be obligated under the existing agreements to provide such property and funding. As such the corporation would be completely autonomous from the disciplines of representative government and the electoral process.[6] This is not to say that the present trustees have done anything other than an exemplary job in operating the home in the past, nor is there any reason to believe that they would not continue to do so in the future. But the abilities and good faith of

6. Count III of the amended complaint raises this issue directly by alleging an unconstitutional delegation of governmental powers to the corporation under Article III, Section 31 of the Pennsylvania Constitution. However, plaintiffs have not requested summary judgment relief under count no. III.

the present trustees are not germane items in the case; rather it is the possibility of a subsequent board of trustees that might misuse the unlimited fiscal powers that would exist in the board which is the danger attendant upon defendants' position that the corporation must be found to be completely independent of the governmental entity that guarantees its financial integrity.

The various affidavits filed by defendants raised many other factual points and issues which the court believes are not relevant to disposing of the matter at hand. These include the underlying circumstances that preceded the incorporation as they affected what the parties intended and agreed upon. As previously noted these agreements and intentions must yield to principles of law which might otherwise defeat or make subservient the parties' contrary intentions and agreements.

Defendants have also raised the argument that if the commissioners are in fact members of the corporation and in control of the corporation that they may well be subject to forfeiting substantial amounts of past reimbursements by Federal and state funding agancies. Again, this is not a matter to be decided by this court. Presumably the commissioners are aware of these possible consequences and must bear the burden for them should they materialize as predicted by the trustees.

Defendants have also asserted their past record in competently operating and maintaining the home and in the amounts of money which they have saved the county compared to previous county government administrations. The court has no reason to question these assertions but must note that they are not relevant to the issues before the court. In other words, it is not up to this court to

decide whether the trustees or the commissioners are better qualified to operate and maintain the county home.

In their affidavit, defendants have also raised an issue about the county solicitor having represented both the commissioners and the trustees in the incorporation and his present representation of the commissioners in this lawsuit. Whether this constitutes an ethical problem for the county solicitor is not before the court and there has been no formal motion filed by defendants to have him removed from the case because of his prior representation of both of the parties in the incorporation process. The court cannot rule on an issue that is not properly presented to it.

In the new matter part of their answer, defendants have alleged certain facts in support of the defenses of estoppel and laches. Implicit in these defenses is the idea of misrepresentation or undue delay in pursuing the action. Since the acts about which plaintiffs complain in count no. II occurred in March and April of 1980, and the present suit was commenced on May 8, 1980, there can be no serious contention as to undue delay, or for that matter as to any misrepresentations by plaintiffs to defendants. Accordingly, the court does not find the defenses of laches or estoppel to be a bar to a summary judgment under count no. II.

Having concluded then that the Clinton County Commissioners are members of Susque View Home, Inc. by virtue of the provisions of section 7103 and having further concluded that the Clinton County Commissioners possessed membership rights in the corporation coupled with an interest arising from their rights and duties to have a voice in the fiscal affairs of Susque View Home as the

elected representatives of the public, the court next turns to the application of sections 7726 and 7783 to the situation. Since the membership rights in question were coupled with an interest and could not be unilaterally terminated by the corporation or the board of trustees, it is fairly clear that section 7726(c) would be applicable to a situation where the trustees attempted to extinguish those rights and such an attempt would constitute a gross abuse of authority or discretion with reference to the corporation. Likewise under section 7783(a) the status and rights of the Clinton County Commissioners as members in the corporation were affected by corporate action when the trustees attempted to extinguish those rights and the court in applying section 7783(a) would have to conclude that the attempted action was not valid and would have to be set aside.

It can also be observed that plaintiffs' rights to remove and appoint trustees was their only way of actively participating as statutory members in the corporation's affairs. The termination of those rights by defendants in effect terminated plaintiffs' membership in the corporation. While plaintiffs have not challenged the amendments under section 7767 of the code, it is doubtful that the membership termination meets the general rule of that section requiring that membership in a nonprofit corporation shall be terminated in the manner provided in a by-law adotteezy the members. In the absence of such a by-law the termination or expulsion of members would be a questionable act.

The facts underlying the foregoing conclusions are all gleaned from the various documents in the case. These include the Articles of Incorporation, the By-Laws, the supplemental agreements, the

purported amendments to the Articles and the By-Laws, and the parties' affidavits. There can be no genuine factual dispute as to any of those facts necessary to the court's conclusions. Some thought has been given to the necessity of allowing defendants to develop more fully the reasons for the amendments. However, the court believes the amendments are both invalid and a gross abuse of discretion in and of themselves, and no amount of explanation can validate them.

The court has two prospective courses of action available to it under sections 7726 and 7783. The first is rather extreme and involves removal of the trustees from their terms of office. Notwithstanding the invalidity of their attempted ouster of the commissioners as members of the corporaton, this remedy is somewhat extreme and under section 7726(c), the court is not obligated to remove the trustees but is merely given the authority to do so. It is apparent that the trustees acted in good faith under the mistaken belief that powers of amendment as to the Articles of Incorporation and the By-Laws permitted them to take this action and under the further mistaken belief that the county commissioners had no membership rights in the corporation. Accordingly, the remedy of removing the trustees would by somewhat extreme and not justified under the circumstances. Thus, the better option is to proceed under section 7783(a) and find the corporate action to be invalid and thus reinstate the parties to their position as it existed prior to the amendment of the Articles of Incorporation and the By-Laws.[7]

---

7. Defendants have suggested in their brief that if it is determined that no valid corporate action occurred under sec-

Plaintiffs have only asked for summary relief under count no. II, and the judgment being entered at this time pertains only to count no. II. In count no. I, plaintiffs requested injunctive relief restraining defendant trustees from acting in that capacity and further restraining defendant trustees from interfering with plaintiffs' acting as trustees. The appropriateness of this relief would depend upon the validity of plaintiffs' May 8, 1980 resolution removing defendants from office for cause and appointing themselves as trustees. This issue is not a part of count no. II and remains to be decided. Also in count no. I, plaintiffs requested further injunctive relief in restraining defendants from entering into any contracts and making any purchases not necessary for the daily operation of the home as well as a request to surcharge defendants for any such expenditures not approved by plaintiffs. All of these issues remain to be decided. Finally, in count no. III, plaintiffs have requested a judicial declaration that the commissioners' participation in the 1976 incorporation was unconstitutional and therefore null and void. This issue has likewise not been decided. The proceedings are scheduled for a non-jury trial on April 30, 1981, and unless plaintiffs withdraw or otherwise abandon these claims for relief, the undisposed of issues in counts I and III will be addressed at trial.

---

tion 7783(a), then the court should order a meeting pursuant to section 7782. This type of order would be appropriate if it were necessary for some affirmative corporate action to take place. In the present case no such affirmative action is required as the amendments in question are being invalidated, and there would be no further action required at the corporate level. The only reason for a meeting at this time would be for the purpose of resolving the present controversy on an amicable basis. Past efforts at such a settlement have failed with the parties opting for litigation rather than conciliation.

Defendants have filed a counterclaim in which they seek injunctive relief restraining plaintiffs from acting as trustees of the home and from acting to operate, manage, maintain, and control the home in interference with defendant trustees' duties. This request for relief is predicated upon plaintiffs' alleged lack of authority to have removed defendants as trustees on May 8, 1980 because of defendants' previous amendments to the Articles and By-laws eliminating plaintiffs' right to remove and appoint trustees. Since the summary judgment being entered under count No. II invalidates these amendments, by necessary implication the basis of the counterclaim no longer exists, and the court sees no need to hear the counterclaim at the upcoming trial. However, as previously noted the validity of plaintiffs' May 8, 1980 resolution under count no. I has not been decided, and will be addressed at the upcoming trial. In their answer to the amended complaint, defendants denied that they had been removed for cause, and this would appear to be the only issue to be addressed with regard to the validity of the May 8, 1980 resolution. As a practical matter if defendants were to prevail on this in plaintiffs' count no. I, by necessity they would get the relief requested in their counterclaim.

## ORDER

And now, April 10, 1981, based upon the foregoing opinion, it is hereby ordered and decreed that a summarh judgment be entered in favor of plaintiffs with respect to count no. II, and that the purported amendments of March 18, 1980 and April 3, 1980 to the By-Laws and Articles of Incorporation be declared invalid, and that Article IX of the Articles of

Incorporation and Article 7 of the By-Laws be reinstated in their original form retroactive to April 3, 1980 as to Article IX and to March 18, 1980 as to Article 7.