**STATE of Missouri, ex rel. Jeffrey BATES, Respondent,**

v.

**AMERICAN POLLED HEREFORD ASSOCIATION, et al., Appellant.**

**No. WD 47102.**

Missouri Court of Appeals, Western District.

Aug. 17, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 28, 1993.

Application to Transfer Denied Nov. 23, 1993.

William E. Quirk, Thomas A. Sheehan, Shughart Thomson & Kilroy, P.C., Kansas City, for appellant.

Joseph H. Moore, Moore & Willy, P.C., Kansas City, for respondent.

Before LOWENSTEIN, C.J., Presiding; ULRICH and HANNA, JJ.

ULRICH, Judge.

The American Polled Hereford Association (APHA), an Iowa not-for-profit corporation, with its principal place of business in Platte County, appeals from the circuit court's order mandating that APHA refer to its probable cause committee a letter received from Jeffrey Bates which purportedly protested the registration with APHA of certain animals as polled herefords. APHA raises three points on appeal. APHA contends that the trial court erred in ordering APHA to refer Mr. Bates' letter to the probable cause committee because, it contends, (1) mandamus is not available to enforce a private contractual dispute; (2) Mr. Bates could not as a matter of law show that he had an unequivocal, clearly-established right to the hearings before the probable cause committee that he sought; and (3) numerous factual disputes and defenses existed between the parties that were never litigated. The circuit court's order in mandamus is reversed.

APHA is an Iowa not-for-profit corporation with its headquarters and principal place of business located in Platte County, Missouri. APHA registers cattle as "polled herefords" upon certification by the animal's breeder that the animal is a descendant of a registered polled hereford sire and a registered polled hereford dam, or is a descendant of an animal recognized by another Hereford registry such as the Canadian Hereford Association.

Jeffrey Bates is a resident of the State of Illinois and a member of APHA. Although not specifically stated in the record, Mr. Bates apparently raises cattle.

On or about April 25, 1990, Mr. Bates wrote a letter "To Whom It May Concern; Attention; Larry Heidbrecht, President, APHA." Mr. Bates communicated his dissatisfaction with APHA for its refusal to register a bull named "KD Vindicator 312" which Mr. Bates had sold to another person. Mr. Bates' letter expressed that the reason the bull had not been registered by APHA was because Ohio State University, through a Dr. Hines, concluded that the bull was not the progeny of another bull, "Klondike Vindicator 504L." Apparently, Klondike Vindicator 504L is registered as a polled hereford by a hereford registry. Mr. Bates' letter reflects that Dr. Hines conclusion was based on analysis of blood drawn from KD Vindicator 312.

In his letter, Mr. Bates contested the pedigree of several animals. He "officially protest[ed] the pedigree of Klondike Vindicator 504L X19845138," an animal that Mr. Bates contended in his letter was tested by blood typing and then sent to Japan. Mr. Bates argues that if the blood type identified in Klondike Vindicator 504L was acceptable for registration, the blood type identified by Dr. Hines blood typing of KD Vindicator 312 should also be acceptable for registration by APHA. Mr. Bates argues that the blood group B20 identified with Klondike Vindicator 312, although rare, should be acceptable for registration. Mr. Bates also "officially protested" the registration of national champion bull "Race," number X22957495.

Mr. Bates' letter concludes as follows: "I trust that this shall be worked out accordingly and justly so that I shall not have to take legal recourse on this matter. Thank you for your time in this matter."

In a postscript, Mr. Bates refers to additional animals that "have been accepted or explunged [sic] in the APHA." He discusses the blood groups of the four animals mentioned in the postscript. He then states in the postscript, "Please consider all animals in this letter officially protested as of today, April 22, 1990."

On September 25, 1990, legal counsel for APHA responded to Mr. Bates' letter by sending to him a letter stating that "APHA reads your April, 1990 letter as not raising any 'official protest' to *any* APHA animal since, as you specifically put it in that letter, 'hopefully all can be worked out on these very important issues and then I could withdraw my protest.' " Counsel's letter to Mr. Bates also requests that if Mr. Bates desired to protest the pedigrees of the animals referred to in his letter, he inform a named person at APHA headquarters so that that person could forward to Mr. Bates "proper forms ... so that you can challenge the pedigrees of these animals in accordance with the APHA By–Laws and Rules and Regulations."

APHA's legal counsel sent a letter dated January 18, 1991, to Mr. Bates. The letter states that although Mr. Bates had requested the "official complaint forms" in December of 1990 that the forms had not yet been filed and that APHA considered that Mr. Bates had no currently pending complaints requiring attention by the APHA probable cause committee.

On or about January 22, 1991, APHA's legal counsel sent Mr. Bates a letter. This letter stated that the "proper forms" for registering a protest had been sent to Mr. Bates but that the completed forms had not been filed. The letter states that APHA believed that Mr. Bates had no pending protest filed with APHA. The letter also attempted to recount a telephone conversation between legal counsel for APHA and Mr. Bates on January 22, 1991, "[w]ith respect to the APHA-registered animals not owned or bred by [Mr. Bates] mentioned in [his] April, 1990 letter." The letter also purported to record that Mr. Bates told legal counsel "again today that whether you were challeng-ing these animals 'depended' on what happened to KD Vindicator 312."

On April 8, 1992, Mr. Bates filed a petition in mandamus in the circuit court of Platte County. The petition alleged that Mr. Bates had protested APHA's registration of certain specified animals which could result in the "suspension, expungement or other action" against the animals. Mr. Bates contended that his April 1990 letter included his protest and that the animals referred to in his letter were the certain specified animals referred to in his petition. Mr. Bates claimed that APHA, in violation of its bylaws, rules and regulations then in effect, refused to refer his letter of protest to the probable cause committee, an organization created by APHA's bylaws for the purpose of determining protests to registered animals. Mr. Bates sought the court's writ of mandamus directing APHA to refer the letter of protest to the probable cause committee.

On April 8, 1992, the circuit court entered its preliminary writ of mandamus directing APHA to file its answer to Mr. Bates' petition. On May 11, 1992, APHA responded. APHA filed its motion to quash Mr. Bates' petition in mandamus. Additionally, APHA filed its answer to the petition, in which it asserted several defenses and denied certain allegations made by Mr. Bates.

On October 13, 1992, after argument of counsel, the circuit court entered its order denying APHA's motion to quash Mr. Bates' petition in mandamus and ordering APHA to refer Mr. Bates' letter protesting the registration of certain specified animals to the probable-cause committee for the committee's consideration, directing the committee to "find that either probable cause exists or does not exist to believe that any of such animals have been improperly registered, all as required by the Bylaws, Rules and Regulations of" APHA. An evidentiary hearing was not conducted.

The court's order constituted a writ of mandamus which APHA timely appealed.

■ As point one on appeal, APHA contends that the trial court erred in ordering it to conduct hearings on animal pedigrees sought by Mr. Bates, averring that an original proceeding in mandamus is not available to enforce a private contractual dispute.

APHA is a not-for-profit, voluntary association. APHA contends that its bylaws are in the nature of a contract between APHA and its members. *See Robinson v. Nick,* 235 Mo.App. 461, 483, 136 S.W.2d 374, 387 (Mo. App.1940). (The relationship between the member and an association such as a trade union is contractual and the constitution, rules, and bylaws of the association comprise the contract). The manner prescribed for resolving protests of registered animals is established by APHA's bylaws. The failure to comply with APHA's established procedures for challenging registered animals constitutes a breach of the contractual relationship between APHA and its members. Thus, APHA contends that Mr. Bates' allegations that APHA violated its bylaws by failing to refer Mr. Bates' letter of protest to APHA's probable-cause committee is an allegation that APHA breached its contractual duty owed to Mr. Bates.

Mandamus has limited application. Mandamus is not an available remedy for an alleged breach of contract. *State ex rel. St. Joseph Hosp. v. Fenner,* 726 S.W.2d 393, 395 (Mo.App.1987). Mandamus as a remedy is designed to enforce an existing right, not to establish one. *Id.* For mandamus to be an appropriate remedy, there must be an existing, clear, unconditional legal right in the relator, and a corresponding, present, imperative, unconditional duty on respondent. *Id.*

Mr. Bates is not without remedy. For example, suit for breach of contract seeking specific performance is one potential legal approach available to Mr. Bates.

Because point one is dispositive, points two and three on appeal are not considered.

The order of the circuit court mandating referral of Mr. Bates' letter to APHA's probable cause committee is reversed, and the circuit court's order is held for naught. The case is remanded to the circuit court with directions to dismiss the petition for writ of mandamus.

All concur.