**The EXECUTIVE BOARD OF the MISSOURI BAPTIST CONVENTION, et al., Appellant,**

v.

**WINDERMERE BAPTIST CONFERENCE CENTER, Respondent.**

**No. WD 69546.**

Missouri Court of Appeals, Western District.

Feb. 3, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 31, 2009.

Application for Transfer Denied May 5, 2009.

Michael K. Whitehead, Counsel, James F. Freeman, III, John J. Miller, Michael W. Blanton, Kansas City, Glen S. Masters, North Kansas City, Charles W. Hatfield, Jefferson City, Co–Counsels, for Appellant.

Jim J. Shoemake, Counsel, Eric M. Walter, St. Louis, Co–Counsel for Respondent.

Before THOMAS H. NEWTON, C.J., JAMES EDWARD WELSH, and JOSEPH P. DANDURAND, JJ.

JAMES EDWARD WELSH, Judge.

The Missouri Baptist Convention (the Convention) through its Executive Board and messengers [1] of churches affiliated

---

1. In *Executive Board of Missouri Baptist Convention v. Carnahan*, 170 S.W.3d 437, 450–51 (Mo.App.2005), this court held that the messengers and the Executive Board of the Convention are the proper parties in interest in this action. According to the Convention's constitution, messengers are representatives from Baptist churches affiliated with the Convention. For the purpose of this opinion, when we state that "the Convention" asserts any claim or argument, we assume that it is

with the Convention sued Windermere Baptist Conference Center (Windermere) [2] asking the circuit court for declaratory and injunctive relief and seeking relief on its claims for rescission and restitution, prima facie tort,[3] and conspiracy. The circuit court dismissed the Convention's claim for conspiracy and granted summary judgment for Windermere on the Convention's remaining claims against Windermere.[4] The Board and the messengers contend that the circuit court erred in determining: (1) that the Convention was not a member of Windermere, (2) that section 355.586, RSMo 2000, does not protect rights of non-members that arise from a corporation's articles of incorporation and that they lacked standing to pursue a claim for violation of section 355.586, (3) that they were not entitled to pursue a third-party beneficiary claim, (4) that no underlying contractual relationship existed that could serve as a basis for their claim of rescission, (5) that they failed to state a claim for restitution based upon unjust enrichment, and (6) that they failed to state a claim for conspiracy. We affirm the circuit court's judgment.

The Convention is an unincorporated association of messengers from affiliated Southern Baptist churches in the State of Missouri. The Convention acts by and through its Executive Board. Windermere is a public benefit corporation under the Missouri Nonprofit Corporation Act and was incorporated on August 25, 2000.

The dispute in this case centers on a conference and recreational facility (campground) located in the Lake of the Ozarks. Originally, the campground was titled in the name of the Executive Board of the Convention. At the 1999 Annual Meeting of the Convention, Terry Lamberth, a Convention messenger, moved that the New Directions Strategic Planning Report and Recommendations, which provided for the incorporation of Windermere to take over the assets and operations of the campground, be approved and that implementation begin on January 1, 2000. The messengers to the Convention approved this motion.

Thereafter, the Executive Director of the Convention, James Hill, worked with the Executive Board's attorney, Mark Comley, to prepare the articles of incorporation and to file them with the Secretary of State. On August 25, 2000, the Secretary of State issued a certificate of incorporation. The original articles of incorporation for Windermere stated, "[t]he corporation shall have no members." Article VII of the original articles stated the purpose of the Corporation, which said:

> The purpose for which this Corporation is formed is to establish and maintain in perpetuity conference and recreational facilities and equipment to under gird an extensive Christian training program that is relevant to contemporary society and Christian family values and a setting in which worship, prayer, Bible study and mission study may become intensely personal, meaningful, and helpful in Christian renewal and commitment.

---

by and through its Executive Board and its messengers.

2. The Convention also sued others who are not parties to this appeal.

3. The Convention voluntarily dismissed its claim of prima facie tort against Windermere and other defendants without prejudice on August 3, 2007.

4. Although in its fifth amended petition the Convention asserted additional claims against other defendants which remain pending before the circuit court, the circuit court denominated its ruling with respect to Windermere as a final judgment, finding no just reason for delay pursuant to Rule 74.01(b).

The original articles also instructed that the Board of Directors, also known as the Board of Trustees, had "the power and authority to supervise, direct and manage the property, affairs and activities of [Windermere]." According to Article XII of the articles of incorporation, the Board of Trustees was to consist of nine persons:

> Three of the nine trustees shall be permanent members by virtue of the office. The permanent members are the Missouri Baptist Convention Executive Director, the Missouri Baptist Convention President, and the Chairman of the Windermere Board of Advisors.[5] The remaining six trustees shall be presented by the Convention Nominating Committee for election by the Missouri Baptist Convention. Three of these six trustees shall be members of the Windermere Board of Advisors.

The articles also provided that, upon dissolution of Windermere, the assets should be distributed to organizations affiliated with the Convention.

At the 2000 Annual Meeting of the Convention, the messengers were asked to vote on the Executive Board's recommendation that the Convention ratify Windermere's articles of incorporation and authorize the transfer of assets and liabilities to Windermere effective January 1, 2001. The messengers were given a copy of the articles and were given the opportunity to express their opinion regarding the Executive Board's recommendation. On October 31, 2000, the messengers voted in favor of the Executive Board's recommendation, ratifying the articles of incorporation and authorizing the transfer of assets and liabilities to Windermere. The Convention also elected the six Windermere trustees, who were nominated by the Convention's Nominating Committee. The Convention

President, the Convention's Executive Director, and the Chairman of the Windermere's Advisory Board were also members of the Windermere Board. Thereafter, the Convention transferred the campground to Windermere.

On November 16, 2000, the Convention filed an application with the Internal Revenue Service for IRC 501(c)(3) exempt status for Windermere. In the letter attached to the application for exempt status, it was noted that Windermere "functions as a separate corporation with a separate governing body and is not managed or controlled by the Missouri Baptist State Convention."

On July 30, 2001, Windermere's Board of Trustees adopted amended articles of incorporation. Windermere's Board of Trustees did not seek the Convention's permission or consent before it amended Windermere's articles of incorporation. The amended articles no longer granted the Convention the privileges of nominating and electing Windermere's trustees and no longer required the distribution of corporate assets upon dissolution to the Convention's affiliated organizations. The amended articles continued to provide that "[t]he corporation shall have no members."

Thereafter, the Convention through its Executive Board and its messengers sued Windermere asserting multiple claims against it in regard to certain assets and operations of Windermere. On August 17, 2007, the circuit court dismissed the Convention's claim for conspiracy, and, on March 4, 2008, the circuit court granted summary judgment for Windermere on the Convention's remaining claims and found that the Convention had no recourse for the loss of the campground at least as pled. The Convention through its Execu-

---

5. The members of the Windermere Board of Advisors were elected by the Convention's Executive Board. The Windermere Board of Advisors met on a regular basis and reported to the Executive Board.

tive Board and its messengers appeal from that judgment.

When considering appeals from summary judgments, we review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the circuit court's granting of a summary judgment de novo. *Id.* "The propriety of summary judgment is purely an issue of law." *Id.* Because the circuit court's judgment is based on the record submitted and the law, we need not defer to the circuit court's order granting summary judgment. *Id.* We will affirm the circuit court's grant of summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* at 380.

A defending party to a lawsuit who moves for summary judgment need not controvert each element of the plaintiffs' claim to establish a right to summary judgment:

> [A] "defending party" may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts [sic], (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* "To constitute a final, appealable judgment, the moving party must establish that he or she is entitled to judgment as a

matter of law as to every theory of recovery pleaded." *Hampton v. Carter Enters., Inc.*, 238 S.W.3d 170, 174 (Mo.App.2007).

In its first point on appeal, the Convention asserts that the circuit court erred as a matter of law in concluding that the Convention is not a member of Windermere under the definition of "member" provided by section 355.066(21), RSMo Cum. Supp. 2007. We disagree.

Section 355.096.2(5), RSMo 2000, says that "articles of incorporation adopted after July 1, 1995, must set forth ... [w]hether or not the corporation will have members[.]" In compliance with this section, Windermere's original articles of incorporation specifically said, "The corporation shall have no members."[6] The Convention argues, however, that, even though the articles of incorporation stated that the corporation shall have no members, the Convention is a member of Windermere because, pursuant to Article XII of Windermere's articles of incorporation, the Convention was entitled to vote for the election of directors on more than one occasion.

For the purposes of Chapter 355 and the Missouri Nonprofit Corporation Act, "member" is defined by section 355.066 as:

> Unless the context otherwise requires or unless otherwise indicated, as used in this chapter the following term[ ] mean[s]:
>
> . . . .
>
> (21) "Member", without regard to what a person is called in the articles or bylaws, any person or persons who on more than one occasion, pursuant to a provision of a corporation's articles or bylaws, have the right to vote for the election of a director or directors; but a

---

**6.** Section 355.181.2, RSMo 2000, clearly acknowledges, "A corporation is not required to have members."

person is not a member by virtue of any of the following:

(a) Any rights such person has as a delegate;

(b) Any rights such person has to designate a director or directors; or

(c) Any rights such person has as a director[.]

The significance of whether or not the Convention was a member of Windermere becomes apparent under section 355.561.1(2), RSMo 2000. If the Convention was a member of Windermere, then the adoption of Windermere's amended articles of incorporation required that the amended articles be adopted "by the members by two-thirds of the votes cast or a majority of the voting power, whichever is less[.]" § 355.561.1(2). If, however, Windermere had no members, then the Convention was not entitled to vote on the adoption of Windermere's amended articles.

■■■ Windermere's articles of incorporation clearly and unambiguously[7] state that the corporation shall have no members. We construe corporate articles according to the general rules of contracts. *Ironite Prods. Co., Inc. v. Samuels*, 985 S.W.2d 858, 861 (Mo.App.1998). The primary rule in interpretation of contracts "is to ascertain the parties' intent and give effect to that intent. To do that, this court

is to rely on the plain and ordinary meaning of the words in the contract and 'consider the document as a whole.'" *Nodaway Valley Bank v. E.L. Crawford Constr., Inc.*, 126 S.W.3d 820, 825 (Mo. App.2004) (citations omitted). "[E]xtrinsic evidence is not admissible to vary, add, or contradict the terms of an unambiguous and complete written document." *Baptist Convention*, 170 S.W.3d at 447.

■■■ Section 355.096.2(5) required that Windermere's articles of incorporation set forth whether or not it would have members. If the definition of "member" in section 355.066(21) determines whether or not a corporation has members, regardless of what the corporation's articles of incorporation state, the requirement of section 355.096.2(5) would be rendered meaningless. "[T]he legislature is not presumed to have intended a meaningless act." *Murray v. Mo. Highway & Transp. Comm'n*, 37 S.W.3d 228, 233 (Mo. banc 2001).

■■■ The Convention attempts to make a convoluted and fastidious distinction that section 355.096.2(5) does not require a corporation to make a selection concerning members but instead requires the corporation to state certain information about the corporation. The Convention asserts that "a selection can have the effect of establishing facts, while a statement is merely a

---

7. The Convention asserts that the circuit court concluded that Windermere's articles of incorporation were ambiguous. The circuit court, however, did not so conclude. The circuit court found:

[The Convention's] position would create patent ambiguity on the face of the Original Articles. On the one hand, [the Convention] acknowledge[s] that the Original Articles contain the unambiguous declaration in Article VI that the corporation has no members. But on the other hand, [the Convention] argue[s] that the language in Article XII, granting the [Convention] the privilege of electing trustees, means that Windermere is actually a member corpora-

tion and that the [Convention] is a member of Windermere. Such incongruity cannot be reconciled, resulting in patent ambiguity. Such ambiguity must be resolved against [the Convention], the drafters of the Original Articles.

The circuit court did not agree with the Convention that the articles of incorporation were ambiguous. The circuit court merely opined that, if it agreed with the Convention's arguments, that any ambiguity would have to be resolved against the Convention as the drafters of the original articles. The circuit court explicitly found, however, that "[t]he Original Articles unambiguously state that '[t]he corporation shall have no members.'"

recording of facts." The Convention urges us to conclude that, "if the articles of incorporation incorrectly state that the corporation will not have members, when the content of the articles clearly describes persons who are members pursuant to the statutory definition, this misstatement [should] not have the effect of changing the fact that the corporation has members." We choose, however, to construe the words used in the articles according to their plain and ordinary meaning. *See Nodaway Valley Bank,* 126 S.W.3d at 825. "The corporation shall have no members." That declaration is clear and unambiguous.

■ The parties acknowledge that Missouri's Nonprofit Corporation Act was patterned after the Revised Model Nonprofit Corporation Act (RMNCA).[8] According to the Introduction to the RMNCA, the RMNCA "facilitates incorporating while requiring incorporators to decide basic questions as part of the incorporation process." [9] REVISED MODEL NONPROFIT CORPORATION ACT, Introduction at xxxi (1987). Under the RMNCA, incorporators are required to answer three fundamental questions when filing articles of incorporation:

(i) Will the corporation be a public benefit, mutual benefit or religious corporation;

(ii) Will the corporation have members;

(iii) What provisions will be made for distribution of corporate assets upon dissolution.

*Id.* (footnotes omitted). Further, the Introduction to the RMNCA states:

Those incorporating under the Revised Act must state in the corporation's articles whether or not it will have statutory members. This requires incorporators to consider alternative forms of organization and to make a choice in light of the rights statutory members would have and the appropriateness of having such members.

*Id.* at xxxiii (footnote omitted).

Indeed, the Official Comment to section 1.40 of the RMNCA, which sets forth the definitions for the Act, says in regard to members, "A corporation is not required to have 'members.' *Once it has decided to have such members,* these members are afforded basic protections and rights by the Model Act." *Id.* at Official Comment 6 to § 1.40 (emphasis added). Moreover, Official Comment 2(e) to section 2.02 states:

Whether or not the corporation will have members. The term "members" has a limited meaning which is set forth in section 1.40(17). Many nonprofit corporations do not have members. They operate with a self-perpetuating board of directors, delegates, or some other system. Those corporations that will not have members must so indicate in their articles. Those corporations that will have members must indicate that there will be members.

*Id.* at Official Comment 2(e) to section 2.02. The intent, therefore, behind the requirement that incorporators set forth whether or not the corporation will have members is to require the incorporators to *decide or select* whether the corporation will have members for its corporation and not merely to state whether or not it will have members as the Convention suggests.

---

8. Kara A. Gilmore, *House Bill 1095: The New Nonprofit Corporation Law for Missouri,* 63 UMKC L.Rev. 633 (1995).

9. "It has been well established that when the legislature adopts a model act, we must presume that the 'General Assembly intended to adopt the interpretation of that section contained in the applicable comments' to the model act...." *State v. Slavens,* 190 S.W.3d 410, 413 (Mo.App.2006) (citation omitted).

Moreover, we find it disingenuous for the Convention to claim that it is a member of Windermere given that the Convention, at its 2000 Annual Meeting, ratified Windermere's articles of incorporation and authorized the transfer of assets and liabilities to Windermere. Before voting on this measure, the messengers were given a copy of the articles and were given the opportunity to express their opinion regarding the Executive Board's recommendation. The Convention offers no explanation how a messenger could form the belief that the Convention is a member of Windermere when the articles of incorporation clearly state that Windermere shall have no members. To the extent that the Convention claims that it should be able to rely upon the language of Windermere's articles of incorporation to determine its status as a member, we whole-heartedly agree. The articles of incorporation clearly informed the Convention and all others that the corporation would have no members.

We acknowledge that the definition of "members" in section 355.066(21) says that persons who have the right to vote for directors are members of the corporation regardless of the name by which they are called. We do not, however, believe that the legislature intended for the definition of "member" in section 355.066(21) to be applied to corporations which have declared that it will have no members. Indeed, the introduction to the definition section of section 355.066 says that the terms set forth in that section, as used in the Chapter 355, are to have the meaning provided "[u]nless the context otherwise requires or unless otherwise indicated[.]" Thus, to the extent that the Convention asserts that the statutory definition of member had to be applied to Windermere's articles of incorporation, we are not persuaded. To conclude that the Convention is a member of Windermere, we would have to ignore the parties' intent and the plain and ordinary language of the articles, which says that "[t]he corporation shall have no members."

The Convention relies on *Baptist Convention of the State of Georgia v. Shorter College*, 266 Ga.App. 312, 596 S.E.2d 761 (2004), *aff'd by* 279 Ga. 466, 614 S.E.2d 37 (2005), and *Kephart v. Looker*, 20 Pa. D. & C.3d 520 (Pa.Com.Pl.1981), in support of its contention that it is a member of Windermere. These cases, however, are factually distinguishable. In *Shorter College*, the court found that the college's charter did not mention members but that the preamble to the charter reflected an intent to confer membership status upon the Georgia Baptist Convention. 596 S.E.2d at 764–65. The Georgia statutory definition of "member" said: " ' "Member" means ... any person who is entitled to vote for the election of a director or directors pursuant to a provision of the corporation's articles or bylaws that expressly provides for or contemplates the existence of members.' " *Id.* at 764 (quoting OCGA § 14–3–140(20)). In *Shorter College*, the preamble to the college's charter contemplated the existence of members, and the Georgia Baptist Convention was entitled to elect the trustees of the college. In this case, the articles of incorporation expressly contemplated that the corporation will have no members.

In *Kephart*, the court found that the corporation's bylaws conferred membership rights on a governmental entity consistent with Pennsylvania's statute defining member. 20 Pa. D. & C.3d at 527–28. The Pennsylvania statutory definition of "member" said:

> " 'One having membership rights in corporation in accordance with the provisions of its bylaws ... If and to the extent the bylaws confer rights of members upon ... governmental or other entities pursuant to any provision of this

part the term shall be construed to include such ... governmental or other entities.' "

*Id.* (quoting 15 Pa.C.S.A. § 7103). The *Kephart* court said, "[E]ven though the parties did not intend the commissioners to have membership rights in the corporation, under section 7103 of the code the commissioners were members of the corporation by operation of law because of certain rights of membership conferred upon them." *Id.* at 531. Moreover, the court concluded that the county commissioners "not only had membership rights in the corporation ..., but because of the corporation's use of public property and potential use of public funds, those membership rights were coupled with an interest ... [and] could not be unilaterally extinguished or deleted by the trustees." *Id.* at 533. The unique situation presented in *Kephart* concerning governmental entities and public funds is not present in this case.

Clearly, Windermere's articles of incorporation indicate that section 355.066(21)'s definition is not applicable by stating that the corporation shall have no members. If a corporation has no members, then no reason exists to apply the definition. Moreover, section 355.066(21)'s definition of member merely sets forth who may qualify as a member. The definition says that regardless of what a person is called in the articles, a person who on more than one occasion has the right to vote for the election of directors will be deemed a member. In that definition, the Legislature was merely trying to clarify who would qualify as a member in those corporations with members. In this case, no misnomer problem exists concerning members because the articles of incorporation set forth that the corporation shall have no members.

The Convention, although granted the privilege of participating in the selection of Windermere's trustees, was not a member of the corporation because the articles of incorporation said there were none. Section 355.326.2, RSMo 2000, says:

If the corporation does not have members, all the directors, except the initial directors, shall be elected, appointed or designated as provided in the articles or bylaws. If no method of designation or appointment is set forth in the articles or bylaws, the directors, other than the initial directors, shall be elected by the board.

Under this section, if a corporation does not have members, a person may participate in the election of directors without that person being or becoming a member of the corporation. A corporation without members does not become a corporation with members just because a third party is given the privilege of electing, appointing, or designating a director.

The Convention was not a member of Windermere and, therefore, was not entitled to vote on the adoption of Windermere's amended articles of incorporation. The circuit court did not err as a matter of law in concluding that the Convention is not a member of Windermere under the definition of "member" provided by section 355.066(21).

■ In its second point, the Convention asserts that the circuit court erred in granting summary judgment in favor of Windermere on the Convention's claim for violation of its rights under section 355.586, RSMo 2000. The Convention claims that the circuit court erred as a matter of law in concluding: (1) that section 355.586 does not protect rights of nonmembers that arise from a corporation's articles of incorporation and (2) that the Convention lacked standing to pursue a claim for violation of section 355.586. The Convention, therefore, contends that, even if we find that it was not a member of Windermere, its rights in Windermere

were nonetheless protected by section 355.586. In particular, the Convention contends that section 355.586 renders Windermere's adoption of its amended articles of incorporation unlawful, ineffective, and void *ab initio* because it constituted an attempt by Windermere to extinguish the existing rights of persons other than members. We disagree.

Section 355.586 says:

An amendment to articles of incorporation does not affect a cause of action existing against or in favor of the corporation, a proceeding to which the corporation is a party, any requirement or limitation imposed upon the corporation or any property held by it by virtue of any trust upon which such property is held by the corporation or the existing rights of persons other than members of the corporation. An amendment changing a corporation's name does not abate a proceeding brought by or against the corporation in its former name.

The critical words in this section are "existing rights." The Convention did not have any "existing rights" because Windermere's articles of incorporation were subject to unilateral amendment at any time. Any rights given to the Convention under Windermere's original articles were rights subject to amendment by Windermere.[10]

Although no Missouri cases have interpreted section 355.586, a Georgia appellate court has dealt with a similar fact scenario in *Morales v. Sevananda, Inc.*, 162 Ga.App. 854, 293 S.E.2d 387 (1982).[11] In that case, a non-profit corporation's original articles of incorporation said that seven directors were elected to serve on the board for life. *Id.* at 388. A majority of the board voted to amend the corporation's articles to state that the corporation's trustees were to be elected according to the corporation's bylaws. *Id.* The board's majority then adopted bylaws eliminating the lifetime directorships. *Id.* Three of the former directors filed suit to have the amended articles and bylaws declared void and to have themselves reinstated as directors. *Id.* The directors claimed that the articles of incorporation provided them with a contractual right to be directors for life, unless removed by two-thirds vote of the entire board. *Id.*

The *Morales* court looked at section 22–906(b) of Georgia's Nonprofit Corporation Code which, like Missouri's section 355.586, provides that no amendment to a corporation's articles shall affect " 'the existing rights of persons other than [mem-

---

10. The Convention claims that pursuant to Windermere's original articles of incorporation, it had the right to have the assets of Windermere distributed to organizations affiliated with the Convention upon Windermere's dissolution, the right to have the Executive Director and the President of the Convention to serve as trustees of Windermere, and the right to elect six of Windermere's trustees.

11. In support of its position, the Convention relies on the South Dakota case of *Banner Health System v. Long*, 663 N.W.2d 242 (S.D. 2003). We find this case distinguishable because, in *Banner Health*, the South Dakota Attorney General took the position that the assets of the nonprofit corporation were restricted by a constructive or implied charita-

ble trust, and the court determined that the nonprofit corporation could not amend its articles of incorporation to substantially change the purposes of the corporation in regard to assets previously gifted to the corporation. In this case, no claim exists that Windermere's assets are subject to a charitable trust. Moreover, Windermere's purpose remains the same. The Convention also relies on the unpublished opinion of *Weston v. Community Baptist Church of Wilson County*, No. M2004–02688–COA–R3–CV, 2007 WL 394644 (Tenn.Ct.App. Feb.5 2007). Unpublished opinions "are neither binding nor persuasive precedent in this [C]ourt." *Craft v. Philip Morris Cos.*, 190 S.W.3d 368, 376 (Mo.App. 2005). Accordingly, we do not discuss *Weston* in this opinion.

bers].'" *Id.* at 388–89. The court determined that " 'rights are vested only when they are fixed, unalterable or irrevocable'" and that the former lifetime directors "had no vested right in any provision of the articles of incorporation." *Id.* at 389 (citation omitted). The court concluded that the "statutory right to amend its articles of incorporation would be meaningless if a corporation ... were unalterably bound by the provisions of its original articles of incorporation." *Id.* The court added that when the corporation adopted its articles "it did not surrender its right to amend the same at any time." *Id.* The same is true in this case.

In Missouri, section 355.551, RSMo 2000, provides: "A corporation may amend its articles of incorporation at any time to add or change a provision that is required or permitted in the articles or to delete a provision not required in the articles." For a corporation like Windermere with no members, section 355.556.2 says the corporation's "board of directors may adopt one or more amendments to the corporation's articles subject to any approval required pursuant to section 355.606." Section 355.606, RSMo 2000, says: "The articles may require an amendment to the articles or bylaws to be approved in writing by a specified person or persons other than the board. Such an article provision may only be amended with the approval in writing of such person or persons."

In this case, nothing in the articles prevented Windermere from unilaterally amending its articles. The rights given to the Convention under Windermere's original articles of incorporation were not "fixed, unalterable, irrevocable" rights but were rights subject to amendment by Windermere. Windermere's original articles, therefore, did not create any enforceable contract rights for non-members like the Convention.

Moreover, if the Convention had actually intended to preserve certain alleged rights, it could have used section 355.606 to preserve those rights. The Convention's agents drafted and filed Windermere's original articles of incorporation, and the Convention's messengers ratified the original articles. Under section 355.606, the Convention had means available to it to protect any interests it may have had in Windermere, but it did not take advantage of those means. The Convention cannot now use section 355.586 to re-write Windermere articles so that the Convention's rights are now protected.

Indeed, section 355.586 was designed to preclude a corporation from amending corporate articles to avoid lawsuits or contracts existing independent of the articles of incorporation. To conclude otherwise would effectively constitute a limitation or restriction on Windermere's power to adopt amendments to its articles.[12] A corporation's right to amend its articles of incorporation would be subject to preserving any rights previously granted in the articles of incorporation to third parties. We do not believe this was the intent of the legislature when it adopted section 355.586. Non-members do not have rights deriving solely from a corporation's articles of incorporation. As this court concluded in *Blue Cross & Blue Shield of Missouri v. Nixon*, 81 S.W.3d 546, 553 (Mo.App.2002), only members of a

---

**12.** The Convention asserts that the circuit court "misconstru[ed] section 355.586 as imposing a limitation upon the power of amendment when the statute actually imposes a limitation upon the effectiveness of amendments." The Convention's interpretation of section 355.586, however, cannot be reconciled with the statutes governing a nonprofit corporation's power to amend its articles of incorporation. Any non-member rights in a corporation's articles of incorporation are not rights at all because the articles may be unilaterally amended.

corporation may have contract rights arising from a corporation's articles of incorporation.[13] Section 355.586, therefore, affords no protection to the Convention.

██ Moreover, under section 355.141, RSMo 2000, the Convention lacks standing to pursue claims against Windermere not based upon an alleged contractual relationship. Section 355.141 states:

> 1. Except as provided in subsection 2 of this section, the validity of corporate action may not be challenged on the ground that the corporation lacks or lacked power to act.
>
> 2. A corporation's power to act may be challenged in a proceeding against the corporation to enjoin an act where a third party has not acquired rights. The proceeding may be brought by the attorney general, a director, or by a member or members in a derivative proceeding.

This statute provides that a corporation's power to act may be challenged only by the attorney general, a director, or members in a derivative proceeding. Because the Convention does not fall within one of these three categories of persons entitled to challenge Windermere's power to amend its articles of incorporation, the Convention lacks standing to challenge Windermere's authority to amend the articles of incorporation. *Blue Cross,* 81 S.W.3d at 553.

In *Blue Cross & Blue Shield of Missouri v. Nixon,* a subscriber to a nonprofit corporation filed a lawsuit claiming that he and a class of subscribers were adversely affected by the corporation's amendments to its articles of incorporation. *Id.* at 552. Specifically, the subscriber claimed that he and the class he represented would have been entitled to a distribution of the corporation's assets in the event of a dissolution prior to the corporation's amendment of its articles of incorporation. *Id.* This court held that the subscriber's claims constituted a challenge to the corporation's power to amend its articles of incorporation and that, pursuant to section 355.141, the subscriber lacked standing to bring such claims. *Id.* The court concluded that "'[o]nly members, directors or the Attorney General have standing to challenge ultra vires acts of a not-for-profit corporation.'" *Id.* (citation omitted). The same is true in this case.

Although the Convention strains to make a distinction between the power of a corporation to act and the effectiveness of a specific corporate act, we find that it is a distinction without a difference in this case, especially given this court's decision in *Blue Cross.* The Convention's challenge to the effectiveness of Windermere's amendment to its articles is intertwined with Windermere's power to amend its articles, just like it was intertwined in *Blue Cross.* The Convention claims that Windermere's amendment of its articles violates section 355.586 because the amendment eliminates the Convention's rights, but such a claim necessarily implicates Windermere's power to amend its articles. As we concluded *supra,* the Convention's interpretation of section 355.586 cannot be reconciled with the statutes governing a nonprofit corporation's power to amend its articles of incorporation. Any non-member rights in a corporation's articles of incorporation are not rights at all because the articles may be unilaterally amended.

██ To the extent that the Convention asserts that construing section 355.141 as barring its section 355.586 claims renders part of section 355.586 meaningless,

---

**13.** Such is consistent with the official comment to section 10.08 of the RMNCA, which is the counterpart to section 355.586. The comment says, "Members may have contract or other legal rights that cannot be altered or eliminated by amendments to the articles."

we are not persuaded. As we stated previously, section 355.586 was designed to preclude a corporation from amending corporate articles to avoid lawsuits or contracts existing independent of the articles of incorporation. In those circumstances, the "existing rights" protected by section 355.586 are derived from sources other than the corporation's articles of incorporation. Nor does our conclusion that section 355.141 bars the Convention's non-contract claims violate the "open courts guarantee." "An open courts violation is established upon a showing that: (1) a party has a recognized cause of action; (2) that the cause of action is being restricted; and (3) the restriction is arbitrary or unreasonable." *Snodgras v. Martin & Bayley, Inc.*, 204 S.W.3d 638, 640 (Mo. banc 2006). The Convention is not being denied access to the courts; it is merely losing its contention. The circuit court, therefore, did not err as a matter of law in concluding that the Convention's non-contract claims, including its claim for violation of section 355.586, were barred by section 355.141.

In its third point, the Convention contends that the circuit court erred in granting summary judgment in favor of Windermere on the Convention's claim that it acquired rights as a third-party beneficiary of Windermere's original articles of incorporation. The Convention claims that Windermere's original articles of incorporation constituted a contract that was intended by the parties to confer rights and privileges upon the Convention as a third-party beneficiary and that Windermere breached that contract when it adopted its amended articles of incorporation. We disagree.

"A third-party beneficiary is one who is not a party to the contract, but who may be able to enforce the terms of the contract." *JTL Consulting, L.L.C. v. Shanahan*, 190 S.W.3d 389, 399 (Mo.App. 2006). A third-party beneficiary may enforce the terms of a contract "if the third party is a party for whose primary benefit the other parties contracted." *Id.* "The right of the third party beneficiary to maintain an action on the contract," however, "must spring from the terms of the contract itself." *Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36, 44 (Mo.App.1980).

In analyzing a third-party beneficiary claim, the question of intent is paramount. *Wood v. Centermark Props., Inc.*, 984 S.W.2d 517, 526 (Mo.App.1998). "The general rule is that recovery by a third party is not permitted if the party is only incidentally, indirectly or collaterally benefited by the contract." *Trout v. Gen. Sec. Servs. Corp.*, 8 S.W.3d 126, 132 (Mo. App.1999). "The contracting parties must have intended to benefit the third party before the third party may maintain a cause of action for breach of contract against the parties." *Id.* "Moreover, the contract terms must clearly express that the contracting parties intended the third party to be the beneficiary of performance of the contract." *Id.*

In this case, because Windermere was a corporation with no members, the only parties to the original articles of incorporation were Windermere and the State of Missouri. Thus, for the Convention to be able to enforce the terms of the original articles, it must show that it was a party for whose primary benefit the other parties contracted. *JTL Consulting*, 190 S.W.3d at 399. This the Convention cannot do.

Windermere's original articles of incorporation contained no express declaration that it intended to benefit the Convention. Indeed, the stated purpose in Windermere's original articles of incorporation says:

The purpose for which this Corporation is formed is to establish and maintain in perpetuity conference and recre-

ational facilities and equipment to under gird an extensive Christian training program that is relevant to contemporary society and Christian family values and a setting in which worship, prayer, Bible study and mission study may become intensely personal, meaningful, and helpful in Christian renewal and commitment.

Nothing in this purpose clause indicates that the parties to the original articles intended that the Convention be the primary beneficiary of the original articles. In fact, the purpose clause reflects that the only third parties, for whose primary benefit the original articles were executed, are the Christian visitors to the Windermere facility. While we agree with the Convention that "[i]t is not necessary that the parties to the contract have as their 'primary object' the goal of benefitting the third party," it is still necessary that the contract clearly express that the contracting parties intended the third party to be the "*primary* beneficiary." *Grossoehme v. Cordell,* 904 S.W.2d 392, 395 (Mo.App. 1995) (emphasis added). Windermere's

original articles do not contain such a clear expression.[14]

■■■ The Convention alleges that the clear intent of the provisions in Windermere's original articles of incorporation, which conferred voting power and property rights upon the Convention, was to allow the Convention to protect the assets and operations that it turned over to Windermere. We disagree. At the most, the original articles, which conferred voting privileges upon the Convention and which instructed that the assets of the corporation should be distributed to organizations affiliated with the Convention upon the corporation's dissolution, establish that Convention was merely an incidental beneficiary. *See Farm & Home Sav. & Loan Assoc. v. Armstrong,* 337 Mo. 349, 85 S.W.2d 461, 467 (1935).[15] Recovery by a third party is not allowed if the party is only incidentally benefited by the contract. *Trout,* 8 S.W.3d at 132.

■■■ To the extent that the Convention asserts that Windermere's original articles of incorporation are ambiguous and that,

14. The Convention relies on *National Board of Examiners for Osteopathic Physicians & Surgeons, Inc. v. American Osteopathic Association,* 645 N.E.2d 608 (Ind.Ct.App.1994), in support of its contention that it has third-party beneficiary rights. The facts in the Indiana case, however, are distinguishable. In that case, pursuant to the terms of the defendant corporation's governing documents, the American Osteopathic Association (AOA) had the right to approve changes to the defendant corporation's governing documents. *Id.* at 611. When the defendant corporation sought to amend its governing documents to eliminate AOA's right to approve board members and to approve changes to the governing documents, AOA brought suit seeking to enforce its rights. The court held that AOA could seek to enforce its rights as a third-party beneficiary to that contract. *Id.* at 618–19. In our case, no such provision in Windermere's original articles gave the Convention the right to approve amendments to the articles of incorporation.

15. To the extent that the Convention asserts that this court found in the *Executive Board of the Missouri Baptist Convention v. Carnahan* case that the *Farm & Home* decision is not applicable to this case, we disagree. In the Carnahan case, this court merely said:

An ongoing dispute among the parties to this issue is the Missouri Supreme Court's interpretation of the organization in *Farm & Home Savings & Loan Ass'n of Missouri,* 337 Mo. 349, 85 S.W.2d 461 (1935). In interpreting the earlier embodiment of the association, the Missouri Baptist General Association, the Court ruled that the organization was "phoenixlike" and could act "during only the period of a particular annual session." *Id.* at 466. This court's review of the governing documents reads the constitution in its present form to indicate a perpetual organization and does not find this earlier characterization a compelling analysis of the modern incarnation of the Convention.

*Carnahan,* 170 S.W.3d at 449 n. 6.

therefore, we should look to the surrounding circumstances of the transaction to glean the intent to confer rights to the Convention as a third-party beneficiary, we decline. Circumstances surrounding the contract's execution may only be examined when the court finds an ambiguity in the original articles. *McKenzie v. Columbian Nat'l Title Ins. Co.*, 931 S.W.2d 843, 845 (Mo.App.1996). No ambiguity exists in the original articles as they contain no express declaration that the intent was to primarily benefit the Convention. Absent an ambiguity, we may not consider the circumstances surrounding the execution of the original articles. The circuit court, therefore, did not err as a matter of law in concluding that the Convention was not entitled to pursue its third-party beneficiary claims.[16]

■ In its fourth point on appeal, the Convention asserts that the circuit court erred in granting summary judgment in favor of Windermere on the Convention's claim for rescission. The Convention contends that the circuit court: (1) improperly found that no underlying contractual relationship existed between the Convention and Windermere that could serve as the basis for the Convention's claim for rescission, (2) improperly concluded that the dual agency principle bars a finding of constructive fraud, and (3) improperly failed to consider the Convention's rescission claim with respect to the agreements by which the Convention transferred property and operations to Windermere. We disagree

■ The remedy of rescission rests upon the existence of a contract. *Medicine Shoppe Int'l, Inc. v. J–Pral Corp.*, 662 S.W.2d 263, 270 (Mo.App.1983). The Convention asserts that, because it was a member of Windermere, it was thereby a party to Windermere's original articles of incorporation. *See State ex rel. Bates v. Am. Polled Hereford Ass'n*, 863 S.W.2d 350, 353 (Mo.App.1993) (articles and by-laws of a corporation constitute a contract between the corporation and its member). Because, however, we have concluded that the Convention is not a member of Windermere, no contract existed between Windermere and the Convention. Rescission, therefore, is not an available remedy for the Convention.[17]

■ The Convention claims that the circuit court failed to consider the Convention's rescission claim with respect to the agreements by which the Convention transferred property and operations to Windermere—in particular, the corporation's warranty deed and assignment agreement. We note that in its fifth amended petition the Convention claimed only that Windermere's "Authorized Charter" should be "rescinded for failure of consideration and constructive fraud." In asking that the "Authorized Charter" be rescinded, the Convention said:

> [P]hysical property should be returned to the Convention and Executive Board,

---

16. The Convention also complains about alternative reasons that the circuit court gave in concluding that the Convention was not entitled to pursue its third-party-beneficiary claims. In particular, the circuit court found that the Convention lacked standing to pursue its third-party beneficiary claims, that the Convention could not enforce its alleged rights as a third-party beneficiary because Windermere is a nonprofit corporation, and that, even if the Convention had enforceable rights as a third-party beneficiary, the Convention had no cause of action because no breach of Windermere's original articles occurred. Because, however, we find that as a matter of law the Convention was not entitled to pursue its third-party beneficiary claims, we need not address these contentions.

17. Because we reach this conclusion, we need not address the Convention's claims that the circuit court improperly applied the dual agency principle to its claim for rescission based upon constructive fraud.

the corporation warranty deed and assignment agreement should be cancelled for lack of consideration, and [Windermere] should make restitution of Convention property and funds transferred to [Windermere] during the year in which the Unauthorized Charter was filed, or at any time thereafter.

The Convention did not plead that it was seeking to rescind any other agreements it had with Windermere. It was merely asserting that if it prevailed on its claim for rescission of Windermere's "Authorized Charter" then the property should be returned, the corporation warranty deed and assignment agreement should be cancelled, and Windermere should make restitution. Thus, because the Convention did not plead that it was seeking rescission of the agreements by which the Convention transferred property and operations to Windermere, we will not convict the circuit court of error on an issue which was not put before it to decide. " 'On appeal, a party is bound by the position taken in the trial court, and an appellate court will not convict the trial court of error on an issue which was not put before it.' " *Cremer v. Hollymatic Corp.,* 12 S.W.3d 363, 368 (Mo. App.2000) (citation omitted).

In its fifth point, the Convention asserts that the circuit court erred in holding that the Convention failed to state a claim based upon unjust enrichment. In its judgment, the circuit court said: "[T]his Court disregards [the Convention's] argument in the summary judgment pleadings for restitution based on the doctrine of unjust enrichment, which claim was not pleaded in the Fifth Amended Petition."

▪▪▪ The Convention asserts that the circuit court actually applied a dismissal standard with respect to this claim rather than a summary judgment standard, and, therefore, our standard of review should be that governing dismissals and not summary judgment. We do not agree. "[S]ummary judgment as well as a motion to dismiss for failure to state a claim may rest upon pleadings alone." *Pennell v. Polen,* 611 S.W.2d 323, 323 (Mo.App.1980). The circuit court entered judgment, not dismissal, in holding that the Convention had not pleaded a claim for unjust enrichment.

▪▪▪ "The elements of unjust enrichment are: '(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; [and] (3) that it would be unjust to allow the defendant to retain the benefit.' " *Miller v. Horn,* 254 S.W.3d 920, 924 (Mo.App.2008) (citation omitted). "The third element, unjust retention of the benefit, is considered the most significant and the most difficult of the elements." *Id.* "Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit." *Id.* The Convention's fifth amended petition contains no express allegation that it would be unjust or inequitable for Windermere to retain and continue operating the campground. The allegations in the petition sufficiently established that Windermere received benefits, but they did not allege that it would be unjust for Windermere to retain the benefits.

To the extent that the Convention relies on *Macke Laundry Service Limited Partnership v. Jetz Service Co.,* 931 S.W.2d 166 (Mo.App.1996), to support its contention that its summary judgment pleadings may explain that the petition intended to state such a claim, we are not persuaded. In *Macke,* the court merely concluded that "it is the factual allegations in the petition, not the form of the petition, which are to be considered in determining a plaintiff's theory." *Id.* at 179. The *Macke* court found that the facts alleged in the petition were sufficient to state a claim against the defendant and his law firm for malicious

prosecution. *Id.* The facts pleaded by the Convention in this case, however, are insufficient to state a claim against Windermere for unjust enrichment.

In its final point, the Convention complains about the circuit court's dismissal of its claim for conspiracy for failure to state a claim.[18] In particular, the Convention asserts that the circuit court erroneously concluded that a corporation can only be held liable for conspiracy when a majority of the members of the corporation engage in unlawful acts.

"When reviewing the dismissal of a petition for failure to state a claim, appellate courts treat the facts contained in the petition as true and construe them liberally in favor of the plaintiffs." *Ste. Genevieve Sch. Dist. R–II v. Bd. of Aldermen of City of Ste. Genevieve,* 66 S.W.3d 6, 11 (Mo. banc 2002). "If the petition asserts any set of facts that would, if proven, entitle the plaintiffs to relief, the petition states a claim." *Id.*

To establish a cause of action for civil conspiracy, a plaintiff must plead facts that support each element, which are: "(1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) resulting damages." *Mackey v. Mackey,* 914 S.W.2d 48, 50 (Mo.App.1996). "The essence of a civil conspiracy is an unlawful act agreed upon by two or more persons." *Id.* (emphasis omitted).

The Convention asserts that it specifically alleged in its petition that Windermere and its board engaged in the following activities:

(1) retaining the services of legal counsel who had already assisted other [Convention] agencies in breaking away from the [Convention], (2) filing an unauthorized amendment of [Windermere's] Charter to implement the break from the [Convention], and (3) filing an improper Notice of Termination of Lis Pendens in an effort to place assets beyond the [Convention's] control.

The hiring of an attorney and the filing of a release of lis pendens notice are not unlawful acts. Further, as we concluded *supra,* the amendment of Windermere's articles of incorporation was not an unlawful act.

The Convention claims, however, that it is not required to establish that Windermere itself engaged in unlawful acts. It merely had to establish that some unlawful act was committed by some conspirator in relation to the conspiracy. *Id.* The Convention asserts that the " 'unlawfulness of a conspiracy may be found either in the end sought or the means used.' " *Schott v. Beussink,* 950 S.W.2d 621, 628 (Mo.App. 1997) (citation omitted). In particular, to support its claim of civil conspiracy, the Convention relies on the actions of Jim Hill, the Executive Director of the Convention's Executive Board and a trustee of Windermere. According to the Conven-

18. After briefs had been filed in this appeal, the Convention filed a motion asking this court to consider whether or not it had subject matter jurisdiction over the conspiracy claim. The Convention claimed that the circuit court's order dismissing its claim of conspiracy against Windermere and four other defendants was not designated as a final judgment for purposes of appeal pursuant to Rule 74.01. We conclude that we have subject matter jurisdiction over this claim as it pertains to Windermere. The conspiracy claim is inexorably linked to the claims resolved in the circuit court's judgment. Once the circuit court's judgment was deemed a final adjudication on the merits, the dismissal of the conspiracy claim as it pertained to Windermere had "the practical effect of terminating the litigation in the form cast," and, therefore, the dismissal of the conspiracy claim as it pertained to Windermere could be appealed. *Chromalloy Am. Corp. v. Elyria Foundry Co.,* 955 S.W.2d 1, 3 (Mo. banc 1997).

tion, Hill "orchestrated the transfer of substantial assets" from the Convention to Windermere. The Convention's allegations of so-called actions, agreements, and conspiracy, however, are vague and insufficient. Such allegations must be supported by facts. Missouri is a "'fact-pleading' state." *ITT Commercial,* 854 S.W.2d at 379. "If the petition contains only conclusions and does not contain the ultimate facts or any allegations from which to infer those facts, the petition may be dismissed for failure to state a claim." *Bohac v. Walsh,* 223 S.W.3d 858, 862 (Mo.App.2007). The circuit court, therefore, did not err in dismissing the Convention's claims for conspiracy for failure to state a claim.

The circuit court, therefore, did not err in granting Windermere's motion for summary judgment on the Convention's claims for declaratory judgment, injunction, rescission and restitution, and in dismissing the Convention's claim for conspiracy. We affirm the circuit court's judgment.

All concur.