KANSAS CITY UNIVERSITY OF MEDICINE AND BIOSCI-ENCES, Respondent,

v.

Karen L. PLETZ, Appellant.

No. WD 73991.

Missouri Court of Appeals, Western District.

Nov. 1, 2011.

Charles W. German, Brandon J. Boulware and Joletta M. Friesen, Kansas City, MO, for appellant.

David F. Oliver, Jeffrey D. Morris, Timothy S. Millman, Timothy R. West, Jonathan Scott Kemp, Kansas City, MO; and Jeremy S. Weis, Prairie Village, KS, for respondent.

Before: VICTOR C. HOWARD, P.J., and ALOK AHUJA and KAREN KING MITCHELL, JJ.

ALOK AHUJA, Judge.

While she was President and Chief Executive Officer of Kansas City University of Medicine & Biosciences ("KCUMB"), Appellant Karen Pletz came under investigation concerning allegations of excessive compensation and improper reimbursement of personal expenses. Although KCUMB initially advanced Pletz's legal expenses, it later terminated her employment and ceased the advance payment of her legal costs. Pletz filed suit against KCUMB, alleging, *inter alia*, that it was under a duty to advance her legal expenses under KCUMB's Articles of Incorporation and Bylaws. The circuit court dismissed the counts of Pletz's amended petition claiming a right to advancement, and certified its judgment on those claims for immediate appeal under Supreme Court Rule 74.01(b). We affirm.

**Factual Background**

KCUMB hired Pletz to serve as its President and Chief Executive Officer in 1995. On October 20, 2009, after hearing allegations from anonymous informants concerning excessive compensation and improperly-charged personal expenses, KCUMB initiated an investigation of Pletz. KCUMB initially paid Pletz's legal fees as they were incurred. As a result of its investigation, KCUMB terminated Pletz's employment on December 18, 2009. At the same time, KCUMB stopped advancing her legal expenses. On March 22, 2010, KCUMB filed suit against Pletz to recover money she had allegedly misap-

propriated. Pletz filed her own petition on the same day, claiming that she had been terminated in violation of her employment contract, and that KCUMB had failed to pay her compensation through her termination date in violation of § 290.110.[1] In addition, Pletz sought both monetary damages and a declaratory judgment based on her claim that KCUMB's Bylaws in effect at the time of her termination gave her a right to advancement of her legal costs by KCUMB. The circuit court denied Pletz's motion for summary judgment on the advancement issue.

On March 16, 2011, Pletz filed a second amended petition. The second amended petition reasserted Pletz's advancement claim; however, the petition now based that claim in the alternative on Articles of Incorporation and Bylaws adopted by KCUMB on April 20, 2010, after this suit was filed, and well after the termination of Pletz's employment. On June 1, 2011, the circuit court granted KCUMB's motion to dismiss the new advancement claims, and denied Pletz's summary judgment motion on the issue as moot. The circuit court's Order and Judgment reasoned that Pletz was not entitled to advancement under the 2010 Bylaws because the Bylaws required that KCUMB's Board of Trustees have authorized advancement to a particular individual, and Pletz had pled no such authorization. The court's Order and Judgment did not separately address Pletz's claim of a right to advancement under KCUMB's 2010 Articles of Incorporation. The circuit court found no just reason to delay entry of final judgment on Pletz's advancement claims under Rule 74.01(b), thereby authorizing this interlocutory appeal.[2] We subsequently granted Pletz's

---

1. Statutory citations refer to the RSMo 2000 as updated through the 2010 Cumulative Supplement.

2. Although Pletz's second amended petition continues to make reference to her right of advancement under KCUMB's predecessor Bylaws, and her claim of entitlement to ad-

motion for expedited consideration, and now affirm.

### Standard of Review

 A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. A court reviews the petition in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. In so doing, a court takes a plaintiff's averments as true and liberally grants plaintiff all reasonable inferences. It will not weigh the credibility or persuasiveness of facts alleged.

An appellate court reviews a trial court's grant of a motion to dismiss *de novo*. It will consider only the grounds raised in the motion to dismiss in reviewing the propriety of the trial court's dismissal of a petition, and, in so doing, it will not consider matters outside the pleadings.

*City of Lake St. Louis v. City of O'Fallon*, 324 S.W.3d 756, 759 (Mo. banc 2010) (citations and internal quotation marks omitted).

The appellate court must affirm the trial court's ruling if the motion to dismiss could have been sustained on any of the meritorious grounds raised in the motion regardless of whether the trial court ruled on that particular ground.

*Kixmiller v. Bd. of Curators of Lincoln Univ.*, 341 S.W.3d 711, 713 (Mo.App. W.D. 2011).

### Analysis

Pletz offers three distinct arguments to justify reversal of the trial court's dismissal of her advancement claims: (1) the pro-visions of KCUMB's 2010 Articles of Incorporation, obligating it to "indemnify *and defend* any trustee or officer," impose a mandatory, non-discretionary advancement duty on KCUMB; (2) the 2010 Bylaws require that KCUMB advance all expenses incurred by Pletz, because the Board approved advancement for other KCUMB executives implicated in the same underlying matter, and that authorization applies to her; and (3) the trial court ignored important public policy considerations supporting mandatory advancement of her fees and expenses. We consider each argument in turn.

A recent federal decision describes the nature of the advancement Pletz seeks:

Advancement is a distinct right complementary to the right to indemnification. Indemnification and advancement work in tandem to encourage talented individuals to serve as corporate officers. Corporate service entails the risk of civil and criminal liability, and corporations may be willing to assume the expenses of defending such suits to attract talented employees. The right to indemnity, however, is often impossible to determine until the legal proceedings are finished. Absent advances, the officer himself must front the cost of defending the legal proceeding, significantly diminishing the attractiveness of indemnity. Advancement addresses this problem by providing timely relief in the midst of litigation. If a corporation withholds advances, the right will be irretrievably lost at the conclusion of the litigation, because at that point the officer will only be entitled to indemnity.

*Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1225 (10th Cir.2009) (Kansas law;

---

vancement under the earlier Bylaws was not explicitly addressed in the trial court's June 1, 2011 Order and Judgment, Pletz's counsel acknowledged at oral argument that she has abandoned her claim for advancement under the earlier Bylaws.

citations omitted); *see also Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del.2005) ("Advancement provides corporate officials with immediate interim relief from the personal out-of-pocket financial burden of paying the significant on-going expenses inevitably involved with investigations and legal proceedings.").

## I.

■ We turn first to Pletz's contention that the 2010 Articles of Corporation mandate that KCUMB advance her legal fees. The 2010 Articles provide:

ARTICLE XI—INDEMNIFICATION

The Corporation shall indemnify and defend any trustee or officer of the Corporation, or any person who serves at the request of the Corporation as director, trustee, officer or agent of another corporation, partnership, joint venture, trust, employee benefit plan or other enterprise, to the fullest extent permitted by the laws of the State of Missouri.

The indemnification and other rights provided for by this Article XI shall not be deemed exclusive of any other rights to which a person may be entitled under any applicable law, the Bylaws of the Corporation, agreement, vote of disinterested trustees, or otherwise. The Board of Trustees shall have the authority to enter into agreements with the trustees and officers of the Corporation and with persons serving, at the request of the Corporation, as directors, trustees, officers and agents of an affiliated corporation or other enterprise, on terms that the Board of Trustees deems advisable, which may provide greater indemnification rights than that generally provided by the Missouri Nonprofit Corporation Act; provided, however, that no such further indemnity shall indemnify any person from or on account of such person's conduct which was fi-

nally adjudged to have been knowingly fraudulent, deliberately dishonest, or willful misconduct.

Pletz argues that the declaration that KCUMB "shall indemnify *and defend*" its trustees and officers requires that it not only reimburse legal expenses after-the-fact, but that it advance those costs to trustees and officers as they are incurred. We need not decide this issue, however, because Pletz's claim fails for a separate reason: she is not an eligible "trustee or officer" under Article XI.

The 2010 Articles were adopted on April 20, 2010. As of that date, Pletz was no longer an officer of KCUMB, having been terminated on December 18, 2009. Indeed, Pletz had already filed her lawsuit seeking advancement of legal fees prior to the adoption of the 2010 Articles.

The reference to "any trustee or officer" of KCUMB in Article XI cannot be read to include individuals, like Pletz, who were *former* trustees or officers at the time the 2010 Articles were adopted. The language of Article XI, which refers only to "any trustee or officer," contrasts with the wording of the indemnification provision of the 2010 Bylaws, which were adopted at the same time. Article X, § 1 of the 2010 Bylaws provides indemnnification rights to "[e]ach person who was or is made a party . . . to any action . . . by reason of the fact that he or she *is or was a trustee, officer, or employee* of the Corporation. . . ." (Emphasis added.)

■■ While we recognize that a non-profit corporation's Articles of Incorporation take precedence over inconsistent provisions of its Bylaws, § 355.116; *Higginsville Memorial Post 6270 v. Benton*, 108 S.W.3d 28, 33 (Mo.App. W.D.2003), Articles of Incorporation and Bylaws adopted at the same time should be construed together where possible.

"Corporate articles and bylaws are to be construed according to general rules governing contracts." *DCW Enters., Inc. v. Terre du Lac Ass'n, Inc.,* 953 S.W.2d 127, 130 (Mo.App. E.D.1997). In contract cases, Missouri law holds that, "even in absence of explicit incorporation, instruments executed at the same time, by the same contracting parties, for the same purpose, and in the course of the same transaction will be considered and construed together." *Boulds v. Chase Auto Fin. Corp.,* 266 S.W.3d 847, 851 (Mo.App. E.D.2008); *see also, e.g., Holbert v. Whitaker,* 87 S.W.3d 360, 363 (Mo.App. E.D.2002) ("multiple documents executed at the same time and relating to the same subject may be construed together to determine the parties' intent"). We see no reason why this principle should not apply to corporate documents (assuming, of course, no inconsistency between the Articles and Bylaws). *See In re Waggoner Estate,* 163 S.W.3d 161, 166 (Tex.App.2005) (construing corporate articles and bylaws together where documents were adopted by shareholders at the same time).

Here, the Board of Trustees adopted the 2010 Articles and Bylaws at the same meeting.' Although both the Articles and Bylaws contain provisions governing indemnification of corporate representatives, they describe the class of officials eligible for indemnification in markedly different ways: the Articles grant indemnification rights to "any trustee or officer of the Corporation," while the Bylaws refer more broadly to any person subject to a claim by reason of the fact that the person "is *or was* a trustee, officer, or employee of the Corporation." The Bylaws unambiguously refer to *both* present *and former* trustees, officers, and employees, and demonstrate that the Board of Trustees was fully capable of granting indemnification rights to former corporate representatives when it

desired to do so. The Articles fail to use similar language. Indeed, unlike the Bylaws' past-tense reference to a person who "was" a trustee, officer, or employee, where the 2010 Articles use verbs to describe the persons entitled to indemnity, they refer to such persons using the *present* tense ("any person who *serves,*" "persons *serving* "). The fundamentally different wording used in the two provisions strongly indicates that the Articles were not intended to refer to former officers, like Pletz. *Cf. State v. Moore,* 303 S.W.3d 515, 520 (Mo. banc 2010) ("The legislature's use of different terms in different subsections of the same statute is presumed to be intentional and for a particular purpose.") (citing *Armco Steel v. City of Kansas City,* 883 S.W.2d 3, 7 (Mo. banc 1994)); *MC Dev. Co. v. Cent. R–3 School Dist.,* 299 S.W.3d 600, 605 (Mo. banc 2009) (same).

This conclusion is confirmed by examining the language of the statutes which authorized the Board of Trustees to adopt the 2010 Articles' indemnification provision. Those statutes, §§ 355.476.1 and .2, use identical language to authorize, but not to mandate, non-profit corporations to indemnify a person who is subject to claims "by reason of the fact that he *is or was* a director, officer, employee or agent of the corporation." (Emphasis added.) The fact that the Board of Trustees failed to include in Article XI the broad language of the authorizing statutes, which unambiguously extends coverage to *former* officers, is also highly significant.

Any rights Pletz may have had under the 2010 Articles could only accrue after those Articles were adopted. *Cf. Schoon v. Troy Corp.,* 948 A.2d 1157, 1165–66 (Del. Ch.2008) (right to indemnification under then-existing articles or bylaws vests upon triggering event, and cannot be rescinded by subsequent amendment to corporate

documents); *Salaman v. National Media Corp.,* No. 92C–01–161, 1992 WL 808095, at *6 (Del.Super. Oct.8, 1992) (same). At the time the 2010 Articles were adopted, however, Pletz was not a KCUMB officer. The reference to "any trustee or officer" cannot be read to include *former* trustees and officers, particularly when the language of Article XI is considered in light of the fundamentally different wording of the indemnification provision of the 2010 Bylaws, and of the authorizing statutes. *See Schoon,* 948 A.2d at 1165–67 (bylaws which authorized indemnification for "a director or officer" did not apply to former director).[3]

Pletz cannot rely on KCUMB's 2010 Articles of Incorporation to establish a right to advancement.

## II.

■ Pletz next argues that she is entitled to advancement of her legal expenses under the 2010 Bylaws. Article X of the Bylaws provides in relevant part:

Sec 1 *Right to Indemnification.* Each person who was or is made a party or is threatened to be made a party to any action, suit, or proceeding, whether civil, criminal, administrative, or investigative, by reason of the fact that he or she is or was a trustee or officer of the corporation, or is or was a trustee, officer, or employee of the Corporation who is or was serving at the request of the Corporation as a director, trustee, officer, or agent of another [entity] . . ., shall be indemnified and held harmless by the Corporation to the fullest extent author-

ized by the Missouri Nonprofit Corporation Act . . . against all expense, liability, and loss . . . actually and reasonably incurred by such person in connection therewith. . . . Such indemnification shall continue as to a person who has ceased to be a trustee, officer, employee, or agent of the Corporation and shall inure to the benefit of his or her heirs, executors, and administrators.

. . . .

Sec 4 *Advancement of Expenses.* The Corporation shall pay all expenses incurred in defending any civil or criminal action, suit or proceeding described in Section 1 of this Article X in advance of the final disposition of any such action, suit or proceeding: a) as authorized by the Board of Trustees of the Corporation in the specific case; and b) upon receipt of an undertaking by or on behalf of such trustee, officer, employee or agent to repay such amount unless it shall ultimately be determined that he or she is entitled to be indemnified by the Corporation.

Section 4 sets forth two conditions for the advancement of expenses: first, the Board of Trustees must authorize advancement "in the specific case"; and second, the indemnified party must provide an undertaking to repay advanced sums unless he or she is ultimately determined to be entitled to indemnity. Both parties agree that the second condition has been met, as Pletz has executed, and provided to KCUMB, the necessary undertaking.

---

**3.** While we need not rely on it, we note that § 355.586 would also appear to defeat Pletz's argument that the 2010 Articles enlarged the rights she was actively asserting against KCUMB at the time of the Articles' adoption. Section 355.586 provides:

An amendment to articles of incorporation does not affect a cause of action

existing against or in favor of the corporation, a proceeding to which the corporation is a party, any requirement or limitation imposed upon the corporation or any property held by it by virtue of any trust upon which such property is held by the corporation or the existing rights of persons other than members of the corporation.

The parties' disagreement centers on the first condition: whether the Board of Trustees has authorized advancement "in the specific case." Pletz argues that the Board has authorized advancement because the "Board has authorized advancement to other officers and trustees in the specific case for which she seeks advancement." Pletz contends that, "[o]nce the Board has authorized advancement of expenses to *anyone* in the specific case, authorization is granted to *all* who incur expenses in that same specific case." Thus, because the Board has approved advancement to other officers subject to claims arising out of the same set of operative facts, Pletz argues that she must be advanced her legal expenses as well.

■ As stated above, we apply principles of contract construction to the interpretation of KCUMB's Bylaws. "The primary rule in interpretation of contracts is to ascertain the parties' intent and give effect to that intent. To do that, this court is to rely on the plain and ordinary meaning of the words in the contract and consider the document as a whole." *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conference Ctr.*, 280 S.W.3d 678, 687 (Mo.App. W.D.2009) (internal citation and quotation marks omitted); *see also Bernstein v. TractManager, Inc.*, 953 A.2d 1003, 1008 (Del.Ch.2007) ("Words and phrases used in the bylaw are to be given their commonly accepted meaning unless the context clearly requires a different one or unless legal phrases having a special meaning are used." (citation and internal quotation marks omitted)).

"The dictionary is a good source for finding the plain and ordinary meaning of contract language." *Ferguson v. Gateway Ins. Co.*, 151 S.W.3d 911, 913 (Mo.App. W.D.2004). The principal dictionary definition of the word "case" does not support Pletz's argument: "a special set of circumstances or conditions: a peculiar situation or series of developments; *esp: the circumstances and situation of a particular person,* thing, or action ..." WEBSTER'S THIRD NEW INT'L DICTIONARY 1178 (unabridged ed.1993) (emphasis added).

We also note that Section 4 separately refers to advancement of expenses in "any civil or criminal action, suit or proceeding." Pletz essentially seeks to equate the word "case," used later in Section 4, to the list of legal proceedings appearing earlier. But the first condition for advancement in Section 4 does *not* use the technical legal phrase, "any civil or criminal action, suit or proceeding"; it instead employs the common expression, "the specific case."

Other provisions of Bylaw Article X confirm that authorization in "the specific case" refers to an individual-specific determination. Section 4 provides a right to advancement in connection with "any civil or criminal action, suit or proceeding described in Section 1 of this Article X." But under Section 1, in order for a particular proceeding to trigger indemnification rights, a particular person must have had a claim asserted against them "by reason of the fact that he or she is or was a trustee or officer of the Corporation." Thus, the proceedings within the scope of the indemnity provided by Section 1, to which Section 4 extends a right of advancement, can only be determined by examining the allegations against particular persons, and the capacity in which those persons took the actions which underlie a claim. This indicates that "the specific case" in which the Board of Trustees may authorize advancement must refer to specific individuals, not particular legal proceedings or sets of facts underlying a claim, in which multiple individuals may be implicated.

In addition, the second condition in Section 4 states that the advancement right accrues "upon receipt of an undertaking by

or on behalf of *such trustee, officer, employee or agent* ...." (Emphasis added.) "Such" is a relational word, referring back to an earlier antecedent.[4] The reference to "such trustee, officer, employee or agent" in the second condition is most naturally read to refer back to "the specific case" in which the Board of Trustees has authorized advancement in the first condition. This further supports KCUMB's position that Pletz was only entitled to reimbursement under Article X, Section 4 of the Bylaws if the Board had authorized reimbursement *for her*. In the absence of such authorization, her claim for advancement under the Bylaws necessarily fails.

Pletz responds that the language of the second condition should not be used to interpret the first condition because, "[b]y consecutively numbering and separating the clauses by a semicolon ... [KCUMB] signified [its] intent that the two clauses be given equal force and dignity." *Colorado Mill. & Elevator Co. v. Chicago, R.I. & P.R. Co.*, 382 F.2d 834, 837 (10th Cir.1967). We agree that the two conditions should have "equal force and dignity"; however, using the person-oriented language of the second condition to inform the meaning of the first condition does nothing to undermine either condition's separate force.

The authorization of the Board in a given case is still required, separate and apart from the receipt of an undertaking by the advancement recipient. By referring to the second condition as one of several considerations informing our interpretation of the first condition, we merely follow the principle that we are to read the Bylaws as a whole.

We also note that the Missouri statute governing indemnification by not-for-profit corporations, § 355.476, also supports our reading of the phrase "in the specific case" in KCUMB's Bylaws. Article X, Section 4 of the Bylaws is closely patterned after § 355.476.5, with some minor wording variations.[5] Section 355.476.5 is not the only subsection of § 355.476 which refers to a board authorization "in the specific case," however. The same language appears, with regard to indemnification of corporate representatives, in § 355.476.4, and in that provision, the context makes clear that the Board's authorization must be made with respect to specific indemnified persons. Section 355.476.4 provides that "[a]ny indemnification under subsections 1 and 2 of this section, unless ordered by a court, shall be made by the corporation only *as authorized in the specific case* upon a determination that indemnification of the director, officer, employee or agent is proper

---

4. "Such" means:
 Of that kind, having particular quality or character specified. Identical with, being the same as what has been mentioned. Alike, similar, of the like kind. "Such" represents the object as already particularized in terms which are not mentioned, and is a descriptive and relative word, referring to the last antecedent.
 *Beatty v. Metro. St. Louis Sewer Dist.*, 731 S.W.2d 318, 320 (Mo.App. E.D.1987) (citation omitted); *see also, e.g., Consol. Freightways Corp. v. State*, 503 S.W.2d 1, 4 (Mo.1972) ("The term 'such users' can refer only to those [users] referred to in the first two paragraphs...."); *Harryman v. L & N Buick–Pontiac, Inc.*, 431 S.W.2d 193, 196 (Mo. banc

1968) ("The phrase 'such accidental injury' can only have reference to the last employment of the words 'injury' and 'accident' and that is in sub-section (1) containing the phrase 'injury or death of the employee by accident'") (abrogated on other grounds).

5. The fact that § 355.476.5 states that legal expenses "*may* be paid by the corporation in advance," while Article X, Section 4 of the Bylaws says that "[t]he Corporation *shall* pay [such] expenses ... in advance," is not relevant to the issue here: both the statute and the Bylaws plainly require authorization of the Board of Trustees "in the specific case" before the right to advancement accrues.

in the circumstances because he has met the applicable standard of conduct set forth in this section." (Emphasis added.) Plainly, "the specific case" in § 355.476.4 refers to the specific circumstances of a particular potential indemnitee; we apply the same meaning to the phrase as it appears in § 355.476.5, and in Article X, Section 4 of KCUMB's Bylaws.

The 2010 Bylaws require that KCUMB's Board of Trustees have authorized advancement of legal expenses *for Pletz* before she would have a right to such advancement. Because she concedes that no such authorization has been issued, the trial court did not err in dismissing her claim for advancement under the 2010 Bylaws.[6]

### III.

In her final argument, Pletz contends that the right to advancement would be rendered meaningless if advancement were contingent upon the Board of Trustees' authorization of advancement in her particular situation. She cites to the following explanation from a Delaware case:

> Corporate advancement practice has an admittedly maddening aspect. At the time that an advancement dispute ripens, it is often the case that the corporate board has drawn harsh conclusions about the integrity and fidelity of the corporate official seeking advancement. The board may well have a firm basis to believe that the official intentionally injured the corporation. It therefore is reluctant to advance funds for his defense, fearing that the funds will never be paid back and resisting the idea of seeing further depletion of corporate resources at the instance of someone perceived to be a faithless fiduciary.

> But, to give effect to this natural human reaction as public policy would be unwise. Imagine what EDS [*i.e.,* Electronic Data Systems Corporation,] believes to be unthinkable: that the United States government and EDS are in fact wrong about Reddy. What if he in fact did not falsify records? What if he in fact did not do anything that was even grossly negligent? In that circumstance, it would be difficult to conceive of an argument that would properly leave him holding the bag for all of his legal fees and expenses resulting from two cases centering on his conduct as an employee of EDS. That result would make the promise made to Reddy in the EDS bylaws an illusory one.

*Reddy v. Electronic Data Systems Corp.,* No. CIV.A. 19467, 2002 WL 1358761, at *5-*6 (Del.Ch. June 18, 2002) (footnote omitted); *see also DeLucca v. KKAT Mgmt., LLC,* No. Civ.A. 1384-N, 2006 WL 224058, at *11 (Del.Ch. Jan.23, 2006) ("Indeed, it is precisely in the circumstance when a business official is accused of serious wrongdoing that the right to advancement is critical, as that right secures the funds for the official to defend herself.").

However, even if requiring Board of Trustees authorization may substantially diminish the availability and effectiveness of advancement under KCUMB's Bylaws, we are tasked in this case with interpreting and applying the right to advancement *as contained in those Bylaws,* not in the abstract. The right to advancement which Pletz seeks to enforce is plainly conditioned upon authorization by the Board of

---

6. Given our disposition, we need not address KCUMB's argument that Pletz failed to adequately plead that the Board of Trustees had authorized advancement to other persons in the same matter. We also note that Pletz makes no argument that the Board was or is legally obligated to authorize advancement to her, individually; instead, her argument is that the necessary authorization has already occurred.

Trustees, and we must honor this condition.

[Appellant's] claim that he is entitled to a broader advancement right than the one provided in the Advancement Bylaw on account of Delaware's public policy favoring advancement fails because that policy preference does not trump basic principles of contract interpretation. To the contrary, our law is clear: any agreement on the part of a corporation to provide advancement rights should be construed according to its terms.

*Thompson v. The Williams Cos.*, No. 2716–VCS, 2007 WL 3326007, at *4 (Del. Ch. July 31, 2007) (citations, footnote and internal quotation marks omitted).[7]

Public policy considerations cannot justify our disregard of the unambiguous conditions on the right to advancement established by KCUMB's Bylaws.[8]

### Conclusion

The judgment of the circuit court is affirmed.[9]

All concur.

---

**7.** Notably, the corporate documents providing advancement rights in *Reddy*, 2002 WL 1358761, and *DeLucca*, 2006 WL 224058, did not contain a requirement of Board authorization "in the specific case."

**8.** Citing *State ex rel. American Eagle Waste Industries v. St. Louis County*, 272 S.W.3d 336, 340 (Mo.App. E.D.2008), Pletz argues for the first time in her Reply Brief that the trial court should not have addressed the merits of her right to advancement on a motion to dismiss her claim for declaratory relief. This argument comes too late, and we do not address it. *Arch Ins. Co. v. Progressive Cas. Ins. Co.*, 294 S.W.3d 520, 524 n. 5 (Mo.App. W.D. 2009).

**9.** As Pletz points out, this appeal involves only her purported right to advancement of legal expenses, not her right to later indemnification of such expenses. We express no opinion concerning Pletz's ultimate right to indemnification.