**CB3 ENTERPRISES LLC, Appellant,**

v.

**Nage L. DAMAS, Respondent.**

**No. WD 75670.**

Missouri Court of Appeals,
Western District.

Dec. 10, 2013.

---

1. All further statutory references are to RSMo 2000.

164

Dennis J. Dobbels and Christopher J. Mohart, Kansas City, MO, for appellant.

Richard E. McLeod, Kansas City, MO, for respondent.

Before Division Four: JAMES E. WELSH, Chief Judge, Presiding, CYNTHIA L. MARTIN, Judge and JAMES C. THOMPSON, Special Judge.

MARTIN.

CB3 Enterprises, LLC ("CB3 Enterprises") appeals from the trial court's entry of judgment pursuant to a jury verdict in favor of Nage Damas ("Damas") on his counterclaim for indemnification. CB3 Enterprises argues that the trial court erred in denying its motion for judgment notwithstanding the verdict because Damas did not, and could not, based on CB3 Enterprises' governing documents, establish a *prima facie* case for indemnification. We affirm.

**Factual and Procedural Background**

CB3 Enterprises is a Missouri limited liability company that was formed in 1996 for the express purpose of investing in commercial real estate. At the time of its formation, CB3 Enterprises had three members, all of whom are brothers—Damas, Frederick Damas, and Thomas Damas. Damas acted as the managing member of CB3 Enterprises until he sold his shares of the company to Frederick Damas. Following Damas's departure as the managing member, certain facts were uncovered that caused Frederick and Thomas Damas to believe that Damas breached his fiduciary duties to CB3 Enterprises.

CB3 Enterprises filed a lawsuit against Damas. The petition alleged, *inter alia*, that Damas breached the fiduciary duties he owed to CB3 Enterprises in that Damas "fail[ed] to disclose conflicts of interests, usurp[ed] company opportunities, misappropriate[ed] company funds, and work[ed]

to the detriment of CB3 [Enterprises]." Damas filed a counterclaim against CB3 Enterprises in which he alleged that CB3 Enterprises' governing documents required it to indemnify him for all the costs and expenses incurred in defending or otherwise responding to CB3 Enterprises' lawsuit.

At the close of the evidence following a five-day jury trial, CB3 Enterprises filed a motion for directed verdict on Damas's indemnification counterclaim. CB3 Enterprises argued that its Articles of Organization and its Operating Agreement expressly barred the indemnification counterclaim. The trial court denied the motion. The jury returned a verdict in favor of Damas on CB3 Enterprises' breach of fiduciary duty claim and on Damas's indemnification counterclaim.

CB3 Enterprises filed a motion for a judgment notwithstanding the verdict ("the JNOV motion") on Damas's indemnification counterclaim. The JNOV motion argued that Damas "did not and could not establish a *prima facie* case for the jury to consider by virtue of CB3[ ] [Enterprises'] governing documents." CB3 Enterprises again argued that its Articles of Organization expressly barred indemnification under the circumstances, and that its Operating Agreement afforded Damas no independent right of indemnification.

The trial court denied the JNOV motion. CB3 Enterprises appeals.

## Standard of Review

■ The trial court's denial of the JNOV motion required it to interpret the company's Articles of Organization and Operating Agreement. A limited liability company's governing documents, including its articles of organization and operating agreement, are construed according to the general rules of contracts. *Cf. Exec. Bd. of Mo. Baptist Convention v. Windermere*

*Baptist Conference Ctr.*, 280 S.W.3d 678, 687 (Mo.App.W.D.2009) (applying the same principle to the governing documents of corporations). Thus, the interpretation of a limited liability company's governing documents is a question of law. *Cf. Newco Atlas, Inc. v. Park Range Constr., Inc.*, 272 S.W.3d 886, 891 (Mo.App.W.D.2008) (remarking that interpreting a contract is question of law). " 'When the . . . denial of a directed verdict or a JNOV is based upon a matter of law, we review the trial court's decision *de novo*." *Bailey v. Hawthorn Bank*, 382 S.W.3d 84, 92 (Mo.App. W.D.2012).

## Analysis

■ In its single point on appeal, CB3 Enterprises argues that the trial court erroneously denied the JNOV motion because CB3 Enterprises brought a "direct action" against Damas and the Articles of Organization unambiguously prohibit indemnification for "direct actions" brought "by or in the right of" the company. We agree with CB3 Enterprises that the Articles of Organization are unambiguous. We do not agree, however, that CB3 Enterprises brought a "direct action" against Damas as that term is defined by the Articles of Organization. Instead, CB3 Enterprises brought a "derivative action" against Damas as that term is defined by the Articles of Organization and as to which indemnification was unambiguously required. We thus affirm the trial court's denial of the JNOV motion.

■ A limited liability company's articles of organization are construed according to the general rules of contracts. *Cf. Exec. Bd. of Mo. Baptist Convention*, 280 S.W.3d at 687 (applying the same principle to the governing documents of corporations). The primary rule of interpretation is to determine the intent of the parties and give effect to that intent. *Id.* We give

the language used in the articles of organization its plain and ordinary meaning. *Cf. Thiemann v. Columbia Pub. Sch. Dist.,* 338 S.W.3d 835, 840 (Mo.App.W.D.2011) (applying the same principle to the interpretation of a contract). If, using the plain and ordinary meaning, the language is unambiguous, we may not resort to rules of construction to interpret the contract. *Id.*

Article VIII of the Articles of Organization describes CB3 Enterprises' obligation to indemnify its managers or officers. It does so through two different provisions which state, in relevant part:

A. **Direct Actions.** The Limited Liability Company *shall indemnify any manager or officer* of the Limited Liability Company *who was or is a party* or is threatened to be made a party *to any* threatened, pending or completed *action, suit or proceeding,* whether civil criminal, administrative or investigative, *other than an action by or in the right of the Limited Liability Company, by reason of the fact that such manager or officer is or was a manager or officer of the Limited Liability Company* ... against liability incurred in connection with such action, suit or proceeding, including attorneys' fees, judgments, fines and amounts paid in settlement actually and reasonably incurred by such manager or officer in connection with such action, suit or proceeding, including any appeal thereof, if such manager or officer acted in good faith and in a manner such manager or officer reasonably believed to be in or not opposed to the best interests of the Limited Liability Company and, with respect to any criminal action or proceeding, had no reasonable cause to believe such manager's or officer's conduct was unlawful....

B. **Derivative Actions.** The Limited Liability Company *shall indemnify any manager or officer* of the Limited Liability Company *who was or is a party* or is threatened to be made a party *to any* threatened, pending or completed *action, suit or proceeding by or in the right of the Limited Liability Company to procure a judgment in its favor by reason of the fact that such manager or officer is or was a manager or officer of the Limited Liability Company* ... against expenses, including attorneys' fees, and amounts paid in settlement actually and reasonably incurred by such manager or officer in connection with the defense or settlement of the action or suit if such manager or officer acted in good faith and in a manner such manager or officer reasonably believed to be in or not opposed to the best interests of the Limited Liability Company....

(Emphasis added.) The Operating Agreement provides that "[t]he Manager shall be indemnified by the Company to the fullest extent permitted by Missouri law."

CB3 Enterprises argues that the "Direct Actions" indemnity provision controls in this case because it brought a "direct action" against Damas. CB3 Enterprises then argues that the "Direct Actions" indemnity provision unambiguously *excludes* any obligation to indemnify Damas for "*action[s] by or in the right of the Limited Liability Company.*" (Emphasis added.)

CB3 Enterprises' argument rests on an erroneous assumption. The argument presumes that the lawsuit filed against Damas was a "direct action." It was not. "Direct Actions" are defined by the Articles of Organization as any action against a manager or officer acting in that capacity *except* actions by or in the right of CB3 Enterprises. By its plain terms, the "Direct Actions" indemnity provision does not apply to the action filed "by" CB3 Enterprises against Damas.

Instead, the action filed by CB3 Enterprises against Damas falls squarely within the scope of the "Derivative Actions" indemnity provision. "Derivative Actions" are defined by the Articles of Organization as any action against a manager or officer acting in that capacity initiated by or in the right of CB3 Enterprises. Damas was sued "by" CB3 Enterprises by reason of his status as the managing member of the company. Damas was entitled to indemnification pursuant to a plain reading of the "Derivative Actions" indemnity provision.[1]

■ The trial court reached this same conclusion, although it did so after finding the Articles of Organization were ambiguous. The trial court found an ambiguity because it believed the "Direct Actions" indemnity provision disallows indemnity in actions brought against Damas "by or in the right of" CB3 Enterprises, while the "Derivative Actions" indemnity provision requires indemnification in actions brought against Damas "by or in the right of" CB3 Enterprises. The trial court concluded that this was an irreconcilable conflict. The trial court resolved the conflict by resort to the Operating Agreement which the trial court found reflected the parties' intent to afford broad indemnification of managers and officers. We do not agree that the indemnity provisions are in irreconcilable conflict.

■ It is a fundamental canon of contract construction that in construing a contract, "[e]ach provision is construed in harmony with the others to give each provision a reasonable meaning and avoid an interpretation that renders some provisions useless or redundant." *Wildflower*

*Cmty. Ass'n, Inc. v. Rinderknecht,* 25 S.W.3d 530, 534 (Mo.App.W.D.2000); *see also Dunn Inds. Grp., Inc. v. City of Sugar Creek,* 112 S.W.3d 421, 428 (Mo. banc 2003) (holding that in interpreting contract, terms should be read as a whole to determine intent, and should be given their plain, ordinary, and usual meaning). The indemnity provisions in the Articles of Organization are harmonious and do not overlap. One applies to actions initiated by or in the right of CB3 Enterprises. The other applies to all other actions. The trial court erroneously concluded, therefore, that the Articles of Organization were ambiguous because they were in irreconcilable conflict.

■ The trial court likely found the indemnity provisions to be ambiguous because of CB3 Enterprises' insistence that its lawsuit against Damas was a "direct action." It is true that the legal dictionary definitions of "direct" and "derivative" actions seem to support CB3 Enterprises' assertion. A "direct action" is "[a] lawsuit to enforce a shareholder's rights against a corporation." BLACK'S LAW DICTIONARY 525–26 (9th ed.2009). A "derivative action" is "[a] suit by a beneficiary of a fiduciary to enforce a right belonging to the fiduciary; esp., a suit asserted by a shareholder on the corporation's behalf against a third party (usu. a corporate officer) because of the corporation's failure to take some action against the third party." *Id.* at 509. If the headings for the indemnity provisions in the Articles of Organization are ascribed their legal dictionary definitions, then "Direct Actions" would refer to ac-

---

1. Of course, the indemnity obligation is limited to circumstances where the indemnified manager or officer "acted in good faith and in a manner ... reasonably believed to be in or not opposed to the best interests of the Limited Liability Company." Damas prevailed on the claim of breach of fiduciary duty asserted against him by CB3 Enterprises, and CB3 Enterprises has not appealed that determination. Thus, there is no dispute that this condition to the right to indemnification was satisfied by Damas.

tions initiated "by" CB3 Enterprises on behalf of its members, while "Derivative Actions" would refer to actions "in the right of" CB3 Enterprises, and thus initiated by a member because CB3 Enterprises failed to act. The legal dictionary definitions for "Direct" and "Derivative" Actions thus yield the irreconcilable conflict noted by the trial court. As we have observed, however, the plain language of the indemnity provisions assign different definitions to "Direct" and "Derivative" Actions than the legal dictionary definitions for those terms. Nothing prevents the parties to a contract from defining terms as they see fit, even if the contractual definition differs from the dictionary definition. *See, e.g., Risher v. Farmers Ins. Co.*, 200 S.W.3d 84, 88 (Mo. App.E.D.2006) (holding that in general, definition of terms used in a contract are controlling); *cf., e.g., State v. Harris*, 156 S.W.3d 817, 822–23 (Mo.App.W.D.2005) (holding that words used in a statute must be afforded statutory definition, superseding commonly accepted dictionary

definition).[2] We will not employ dictionary definitions for terms that are contrarily defined by the plain language of a contract, particularly when to do so would create an ambiguity where none otherwise exists. *Cameron Mut. Ins. Co. v. Marler*, 926 S.W.2d 62, 64 (Mo.App. E.D.1996) (holding that in construing a contract, court will not create ambiguity where none exists).

We conclude that the Articles of Organization are not ambiguous. Damas was entitled to indemnification under a plain reading of the "Derivative Actions" indemnity provision. The trial court concluded that Damas was entitled to indemnification, though it did so based on an erroneous finding that the Articles of Organization are ambiguous.[3] *Baker–Smith Sheet Metal, Inc. v. Bldg. Erection Servs. Co.*, 49 S.W.3d 712, 716 (Mo.App.W.D.2001) ("Whether a contract is ambiguous is a question of law to be decided by the court."). We nonetheless affirm the trial court's judgment denying the JNOV mo-

**2.** The Articles of Organization do not contain a provision often included in contracts advising that paragraph headings are meant as a convenience, and shall not be resorted to for interpretation of the contract. *See, e.g., McGraw v. Andes*, 978 S.W.2d 794, 807 (Mo. App.W.D.1998). There is such a provision in the Operating Agreement where the parties agreed that "[t]he headings in this Operating Agreement are inserted for convenience only and are in no way intended to describe, interpret, define, or limit the scope, extent or intent of this Operating Agreement or any provision thereof." Damas argues that because the Operating Agreement and the Articles of Organization were executed at the same time, we should read this provision of the Operating Agreement to apply as well to the Articles of Organization. *See Kansas City Univ. of Med. & Biosciences v. Pletz*, 351 S.W.3d 254, 258 (Mo.App.W.D.2011). According to Damas, if we do so, we would conclude that the "headings" ascribed to the indemnity provisions in the Articles of Organ-

ization are immaterial to interpretation of the provisions.

We need not determine whether it is appropriate to rely on a provision in the Operating Agreement to aid in our interpretation of the Articles of Organization, as we otherwise conclude that the Articles of Organization unambiguously require Damas's indemnification.

**3.** CB3 Enterprises asserts in a footnote that if the Articles of Organization are ambiguous, the trial court's resolution of the ambiguity between the indemnity provisions "forced the inference" that the phrase "in the right of" equates with derivative actions, when it could be read to mean actions by successors in interest to CB3 Enterprises. The argument is not preserved for our review, as it exceeds the scope of the point relied on. *Kerr Constr. Paving Co. v. Khazin*, 961 S.W.2d 75, 82 (Mo. App.W.D.1997); Rule 84.04(e). We note, *ex gratia*, however, that CB3 Enterprises' argument is rendered moot by our conclusion that the indemnity provisions in the Articles of Organization are not ambiguous.

tion, as we are permitted to do so on any ground supported by the record. *See, e.g., Clayton v. Sarratt,* 387 S.W.3d 439, 445 (Mo.App.W.D.2013) ("[W]e will affirm the judgment of the trial court on any ground supported by the record." (internal quotation marks omitted)).

The trial court did not erroneously deny the JNOV motion. The indemnity provisions in the Articles of Organization are not ambiguous. The "Derivative Actions" indemnity provision required indemnification of Damas by its plain and clear terms.

## Conclusion

We affirm the trial court's Judgment.

All concur.